43  559|
f46  210|
43  559|
48  327|

ABNER A. BUCHANAN, RECEIVER, APPELLANT, V. PERRY SELDEN ET AL., APPELLEES, IMPLEADED· WITH PARKER L. MUNROE, APPELLANT.

FILED JANUARY 17, 1895.   No. 5445.

1. **Mechanics' Liens**: ITEMIZED ACCOUNT: DATE OF FURNISHING MATERIALS. Where, in the itemized account attached to a sworn statement filed by a subcontractor for the purpose of establishing a lien for labor or material which he has furnished a contractor for an improvement on real estate, more than sixty days intervene between two items of the account, the presumption is that all the items following the hiatus were furnished under a separate contract from those preceding it.

2. ——: ——: ——. The Omaha Building Company contracted to furnish material and erect for Selden a building in Blair, Nebraska. McGreer & Co., of Omaha, agreed with the building company to furnish it certain material for said building. The last items of material furnished by McGreer & Co. under their contract were shipped from Omaha December 1, 1890, and consigned to the building company at Blair, Nebraska. This material reached Blair on the 5th of said December, and the building company on that date received the materials and paid the freight thereon, but at its request the materials were left at the depot until December 10. *Held*, That the materials were furnished for the improvement on December 5.

3. ——: ——: ——: EVIDENCE. The evidence examined, and *held* to support the finding of the district court that the appel-

lants, subcontractors, did not file a sworn statement of the amount due them from the contractors within sixty days of the date they furnished the last item of material under their con-tract with such contractors.

APPEAL from the district court of Washington county. Heard below before DAVIS, J.

See opinion for statement of the case.

*Montgomery, Charlton & Hall,* for appellants:

Plaintiff is entitled to a lien. (*Great Western Mfg. Co. v. Hunter,* 15 Neb., 37; *Ballou v. Black,* 17 Neb., 397; *Gaty v. Casey,* 15 Ill., 192; *Williams v. Chapman,* 17 Ill., 425; Phillips, Mechanics' Liens, secs. 16, 17, 215, 344, 345; *Manley v. Downing,* 15 Neb., 637; *Murray v. Rapley,* 30 Ark., 573; *Williams v. Webb,* 2 Dis. [O.], 430; *Hugg v. Hintrager,* 45 N. W. Rep. [Ia.], 1035; *Reed v. Bagley,* 24 Neb., 332; *Missouri Valley Lumber Co. v. Weber,* 43 Mo. App., 179; *Pierce v. Osborn,* 19 Pac. Rep. [Kan.], 656; *Lamb v. Hanneman,* 40 Ia., 41; *Miller v. Faulk,* 47 Mo., 264; *Rogers v. Omaha Hotel Co.,* 4 Neb., 54; *White Lake Lumber Co. v. Russell,* 22 Neb., 129; *Hays v. Mercier,* 22 Neb., 660; *Bohn Mfg. Co. v. Kountze,* 30 Neb., 719; *Collins Granite Co. v. Devereux,* 72 Me., 422.)

Munroe is entitled to a lien. (*Gray v. Elbling,* 35 Neb., 278; *Hazard Powder Co. v. Loomis,* 2 Dis. [O.], 551; *Albright v. Smith,* 51 N. W. Rep. [S. Dak.], 592; *Millsap v. Ball,* 30 Neb., 734; *Cook v. Murphy,* 24 Atl. Rep. [Pa.], 630; *State Mfg. Co. v. Norwegian Seminary,* 47 N. W. Rep. [Minn.], 796; *St. Paul & Minneapolis Pressed Brick Co. v. Stout,* 47 N. W. Rep. [Minn.], 974; *Lamb v. Hanneman,* 40 Ia., 41; *Skyrme v. Occidental Mill & Mining Co.,* 8 Nev., 235; *Capron v. Strout,* 11 Nev., 304; *Page v. Bettes,* 17 Mo. App., 366; *Livermore v. Wright,* 33 Mo., 31.)

*Jesse T. Davis, contra.*

RAGAN, C.

Some time in August, 1890, one Perry Selden was the owner of lot 15, in block 47, in the city of Blair, Nebraska, and on said date entered into a contract in writing with the Omaha Building Company, by the terms of which the latter agreed to furnish the material and construct a brick building for Selden on said lot. One L. McGreer & Co. and one P. L. Munroe, both of Omaha, furnished materials to the contractor, the Omaha Building Company, towards the erection of said building for Selden. McGreer & Co. failed, and one Abner A. Buchanan was appointed receiver for the firm. The contracts with McGreer & Co. and with Munroe for the materials which they furnished the contractor, the Omaha Building Company, were made with one H. B. Mayo, the agent of the building company. On the 5th of February, 1891, McGreer & Co. and Munroe, for the purpose of securing a lien on said premises of Selden for materials which they had furnished the Omaha Building Company towards the erection of Selden's building, filed a sworn statement of the amount due them from the building company for such material, together with a description of Selden's property, with the register of deeds of Washington county; and attached to said sworn statements were itemized accounts of the materials which McGreer & Co. and Munroe alleged they had furnished to the Omaha Building Company. The receiver of McGreer & Co. brought this action in the district court of Washington county to have established and to foreclose a lien on the above described property for the materials which McGreer & Co. had furnished said Omaha Building Company towards the erection of said building. Perry Selden, the Omaha Building Company, and Munroe were made defendants to this action. The Omaha Building Company

made no appearance in the case. Munroe filed an answer in the nature of a cross-petition, and asked to have established and foreclosed a lien in his own favor against the Selden property for material furnished the Omaha Building Company in the erection of Selden's building. Selden filed answers to the petition of the receiver and the cross-petition of Munroe denying the validity of their liens. The court rendered a decree dismissing the petition of the receiver and the cross-petition of Munroe, and from that decree they appeal to this court.

We will first dispose of the appeal of the receiver of McGreer & Co. The sworn statement of the amount due McGreer & Co. from the Omaha Building Company, the contractor, was filed in the office of the register of deeds of Washington county on the 5th day of February, 1891. Was this sworn statement filed within sixty days from the date that the last item of material was furnished by McGreer & Co. to the Omaha Building Company? There is attached to the sworn statement of McGreer & Co. an itemized account of the material which they allege they furnished the Omaha Building Company. The first date of this itemized bill is "1890, Oct. 13," and the first item is "one flight stairs;" then follow twenty-four items without a date, and then occurs on the bill:

> "Dec. 12.   400 ft. casing.
> 4½ cir. casing.
> 55 ft. apron.
> 25 ft. thres.
> 275 ft. win. stops.
> 1 flagstaff.
> 6658 ft. ½.
> Cartage."

McGreer & Co., to establish their lien, called as a witness one Ferguson, who testified that he worked for McGreer & Co. about October 13, 1890; that he was foreman and manager and running their mill for them; that while

he was working for McGreer & Co. he made a contract
with one H. B. Mayo—this Mayo was the agent of the
Omaha Building Company—on behalf of McGreer & Co.,
in and by which they were to furnish material towards the
erection of Selden's building; that the account of items at-
tached to the sworn statement of McGreer & Co. was cor-
rect; that the last material furnished under the contract
was shipped from Omaha on the 1st day of December,
1890; that there was no written agreement between the
parties, and the witness did not remember where the mate-
rial was to be delivered. The witness identified a shipping
bill or receipt signed by the agent of the St. Paul & Omaha
Railroad Company at Omaha, December 1, 1890. This
shipping bill recited that the railroad company had received
from McGreer & Co., to be transported to Blair, Nebraska,
and there delivered to H. A. Mayo, "22 bdls. lumber."

H. B. Mayo also testified in behalf of McGreer & Co.
that he, as agent for the Omaha Building Company, made
a contract with McGreer & Co. by which the latter were to
furnish the Omaha Building Company material for Sel-
den's building; that the material which McGreer & Co.
was to furnish the building company consisted of mill
work, such as doors, windows, and interior finish; that he
had examined the sworn statement filed by McGreer & Co.
for the purpose of obtaining a lien, and that it appeared to
be correct; that the material mentioned in said sworn state-
ment was furnished to said building company, or to Mayo
for it; that he superintended the construction of the build-
ing up to December 1; that the last material was furnished
by McGreer & Co. on the 10th day of December, 1890;
that he, Mayo, paid the freight at Blair on the 5th of
December on the material shipped to the building company
on the 1st of December, but he allowed the material to lie
in the depot until the 10th of December, at which time it
was removed to the building; that the material was al-
lowed to remain in the depot from the 5th to the 10th, at

his, Mayo's, request; that in this last shipment were twenty-two bundles of stair railing and some trimming, and some interior stairs for the basement; that the flagstaff mentioned in the itemized account attached to McGreer & Co.'s sworn statement was not in the last shipment; that the contract between McGreer & Co. and himself on behalf of the building company was that the former should deliver the material at the building in Blair; that the flight of stairs furnished by McGreer & Co. was an inside flight; that the stairs were not furnished on October 13, 1890, but were in the last shipment.

As traversing or tending to traverse this evidence Selden testified that he was about the building nearly every day while it was in process of construction, and that to the best of his knowledge no material whatever was delivered at the building after the 1st of December; that Mayo abandoned the work on the 28th or 29th of November, and was not there after that date; that the flagstaff furnished by McGreer & Co. was put on the building prior to the 28th of November; that he remembers when Mayo abandoned the building, because he left on the afternoon of the 28th or 29th of November without paying his men and never came back to do any more business.

One Vaughn, the architect, also testified in behalf of Selden that he was at the building once every day, and sometimes two or three times; that the casings for the windows were not delivered at the building prior to the 1st of December, but were in a storehouse across the alley from the building prior to the first of December; that the four and one-half circular casing charged on the sworn statement of McGreer & Co. as having been delivered after December 1 was prior to that time in said store-house; and that some window stops were also in the store-house at the time prior to December 1; that the flagstaff was on the building before the roof was put on.

From this evidence the district court may have concluded

that the materials which McGreer & Co. shipped on the 1st of December, 1890, to the Omaha Building Company, or to their agent, Mayo, were furnished for the improvement on the 5th of December, 1890, at which time Mayo paid the freight on the material; and if the court did so conclude, the evidence supports the finding; and as the lien was not filed until the 5th of February, 1891, it was not filed within sixty days of the date on which McGreer & Co. furnished the Omaha Building Company the last item of material furnished under the contract. Again, the district court may have concluded from this evidence that the material which McGreer & Co. claimed to have furnished the Omaha Building Company on December 1st or 5th, 1890, was in fact not furnished; and if the court did so find, we cannot say that such finding is unsupported. There are several things which tend to discredit the evidence in this case in behalf of McGreer & Co. It is not pretended by them that they furnished any material to the Omaha Building Company on December 12, 1890, although they so allege in their itemized account of material attached to their sworn statement filed for the purpose of obtaining this lien; and the very first item on their account of items under date of October 13 is "flight stairs," and yet Mayo testifies that these stairs were delivered to the Building Company in December; and in the itemized account attached to the sworn statement is a flagstaff charged up with the items which McGreer & Co. claim to have delivered or shipped on the 1st of December, and yet Mayo says that this flagstaff was not in that shipment, and other witnesses testified that it was on the building prior to November 28. We certainly cannot say that the finding of the district court against McGreer & Co. was wrong.

We next direct our attention to the appeal of Munroe. The account of items attached to Munroe's sworn state-

ment filed by him for the purpose of obtaining a lien against Selden's property is as follows:

> "1890.
> August 29.   To 6,500 pressed brick.
> Sept.   27.   "   "   "   "
> Dec.   10.   " ½ gal. white gloss paint."

Munroe's sworn statement of the amount due him from the building company for material which he had furnished it towards the erection of Selden's building was filed on February 5, 1891. Was it filed within sixty days of the date on which he furnished the last item of material to the building company under the contract made with it to furnish material? On the trial Munroe testified on his own behalf as follows:

That some time in 1890 he entered into a contract with the Omaha Building Company to furnish material for the construction of Selden's building.

Q. What material were you to furnish under the contract?

A. Any material that I could furnish for the completion of the building.

Q. Enumerate such material as you handled.

A. I handled crushed stone, dimension stone, terra cotta fire-proofing, parlor door hangings, etc.

Q. State what you did furnish under the contract.

A. I furnished pressed brick and so on.

Q. State when you furnished said material.

A. One car load of brick September 1.

Q. State when you furnished the next material under said contract.

A. On the 22d of September.

Q. What was that?

A. That was a car load of brick.

Q. State whether or not you furnished anything else under the contract.

A. Some white gloss paint.

Q. When was that?

A. I furnished it on the 10th of December.

Q. Did you make out this bill?

A. No sir.

Q. Who made the bill out?

A. My attorney.

Q. Who ordered this half gallon of white gloss paint?

A. Mr. Mayo.

Mr. Mayo also testified in behalf of Munroe as follows:

Q. State whether or not you furnished this paint as detailed by Mr. Munroe on December 10, 1890.

A. I did.

Q. Took it out on that day?

A. Yes, sir.

Q. Had you contracted with Mr. Munroe to furnish the hardware for the building?

A. Yes.

Q. State what the facts are connected with this paint that you speak of.

A. It was paint that I could not get in Blair and I got it through Mr. Munroe.

Q. Where was that paint used?

A. I presume it was used in the building. I turned it over to Mr. Sane, who had the job of painting it.

Q. Did he do any painting after that time?

A. I presume he did.

As against the contention of Munroe, Selden testified:

Q. There is a charge of December 10, one-half gallon of white gloss paint, sixty-five cents, in Mr. Munroe's bill. State whether or not any of that kind of paint was delivered at that time.

A. Not to my knowledge.

Q. Do you know of any of that kind of paint being used upon it (the building)?

A. No, sir.

Q. Was any of that kind of paint required in the construction of that building?

A. Not to my knowledge.

Vaughn, the architect who superintended the construction of the building, testified for Selden as follows:

Q. Do you know what kind of material was used there in painting,—what was called for by the contract or specifications in relation to the painting of that building?

A. I cannot recollect the actual numbers that were used. It was Sherwood & Williams' paint specified, but the numbers of the paint I do not know. They are in the specifications.

Q. Was that already mixed paint?

A. Sherwood & Williams' are ready mixed paints.

Q. There is a charge of one-half gallon of white gloss paint in Mr. Munroe's bill. I will ask you whether or not that was required as a part of the contract?

A. There was nothing in the specifications, I am sure, nothing in the paint for the building that called directly for white gloss paint.

Q. Where could that have been used in and about the building according to the plans and specifications, or was it called for?

A. I could not tell of any place.

The district court may have concluded from this evidence that the one-half gallon of white gloss paint was never furnished by Munroe to be used, nor used, in the painting of the Selden building, and if he did so conclude, the evidence supports its finding. One thing is certain, that this item of paint was not furnished by Munroe in pursuance of the original contract made by him with the building company to furnish material for the Selden building. He was to furnish such materials as he "handled," and he "handled" crushed stone, dimension stone, terra cotta fire-proofing, parlor door hangings, etc. The evidence does not disclose that Munroe even dealt in paints, or, to use his expression, "handled" them. His sworn statement, which he filed for the purpose of obtaining a lien against this

building was not filed within sixty days from the date he furnished the last item of material to the building company which he agreed to furnish it under his contract. For Munroe to establish a lien against this property for the brick which he furnished on the 29th of August and the 22d of September he should have filed with the register of deeds "his sworn statement within sixty days of September 22d." Where, in the itemized account attached to a sworn statement filed by a subcontractor for the purpose of establishing a lien for materials which he has furnished a contractor for an improvement on real estate, more than sixty days intervene between two items of the account, the presumption is that all the items of material furnished after the hiatus were furnished under a separate contract from those preceding the hiatus (*Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207); and in the case at bar the evidence on behalf of Munroe has not overthrown that presumption. The item of paint claimed to have been furnished by him on December 10, 1890, and the items of brick furnished on August 29 and September 22, are not items of one account and were not furnished under the same contract. The item of December 10, if furnished at all, was furnished under a separate and independent contract from that under which the bricks were furnished. The judgment of the district court is in all things

AFFIRMED.