DENNISTON & PARTRIDGE COMPANY, Appellant, v. OTTO H. LUTHER et al., Appellees.

MECHANICS' LIENS: Proceedings to Perfect—Belated Filings—
1    Burden of Proof. A mechanics' lien claimant, who delays the filing of his claim for a lien until after the expiration of 90 days from the furnishing of the last work or material, must negative the good faith of purchasers or incumbrancers whose rights attached after said 90 days.

MECHANICS' LIENS: Proceedings to Perfect—Separate Contracts
2    for Separate Buildings. Materials for *separate* buildings erected under *separate* contracts may not, as against subsequent purchasers or incumbrancers, be charged into one account and thereby extend the time for filing claim for lien.

MECHANICS' LIENS: Proceedings to Perfect—Fatal Break in Account.
3    count. The time for filing claims for liens may not, as against subsequent purchasers or incumbrancers, be extended by the expedient of furnishing articles for the building long after it was mutually treated as completed.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

OCTOBER 2, 1920.

OPINION ON REHEARING, JUNE 23, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

SUIT in equity, to foreclose a mechanics' lien. There was a decree for plaintiff for recovery of the amount claimed, as against the defendants Luther and wife, but denying foreclosure of lien, except for a fractional part of the debt. The plaintiff appeals.—*Affirmed.*

*Campbell & Campbell*, for appellant.

*Nourse & Nourse*, for appellees.

PER CURIAM.—Plaintiffs are dealers in building materials. They furnished Luther materials for building two houses in Colfax. The controversy in this case turns upon the question whether plaintiffs' claim for a lien was filed in time, or under circumstances which will permit them to foreclose such lien as against the defendant Howell, who alleges that he acquired the title free from such incumbrance. The real estate in question is the west 95 feet of two adjoining town lots. About October 1, 1913, Otto Luther, desiring to build a house on a part of said tract, presented to the plaintiff a bill or list of the materials required for that purpose, and entered into a contract for its purchase. With said materials, a building, spoken of in the record as the "big house," was completed, or substantially so, not later than December 20th of that year. The evidence fairly shows that no part of the materials so ordered was furnished after that date. It seems to be conceded, however, that, some time during the following summer, on the order of Luther or his wife, plaintiff delivered to them two screen doors, for use in that building. In the following spring, beginning early in April, 1914, plaintiff furnished to the Luthers the lumber and other materials necessary for the construction of another building, spoken of in the record as the "small house," on another part of the described premises. The larger building is on the west 95 feet of Lot 6, and the smaller on the west 95 feet of Lot 7 in Block 1 of Jordan's Addition to Colfax. A fence separates the premises. The items furnished for the smaller building were delivered on various dates from April 1, 1914, to June 24, 1914, and aggregated about $112. There was still unpaid upon the materials for the larger building a remainder which, together with the item last named for the small house, made up a total of $774.84, for which sum the Luthers, on January 15, 1915, gave to plaintiffs their promissory note. Plaintiffs' claim for a mechanics' lien was not filed until July 27, 1916. That claim, as filed, is stated as one continuous account, covering all the items of material furnished for both buildings; and the affi-

davit alleges that the same were sold and delivered to Luther "for a certain building" situated upon the described premises. It appears without controversy that, in February, 1914, Otto Luther conveyed the property to his wife, Blodwen Luther, and that, on June 23, 1915, they conveyed the entire property to one Boyd, apparently to be held as a mortgage, to secure a debt for $615. On January 20, 1914, Luther and wife again mortgaged the same property to one Mahoney for $900. On March 26, 1915, the Luthers made to one Newcomb still·another mortgage on the same property, to secure a loan of $1,500, a part of which was used to pay off the Mahoney mortgage. On July 27, 1916, the Luthers made still another mortgage to the defendant Howell for $1,400, subject to prior mortgages to the amount of $2,100. This latter mortgage was executed and filed for record a few hours before the filing on the same date of plaintiffs' statement for a mechanics' lien. A few days later, Luther and wife conveyed the property by deed to Howell, who has, as we understand the record, paid off and relieved the property of the incumbrances held by Newcomb and Boyd.

In foreclosing their lien, the plaintiffs assert the right to establish the same against all the property, and to priority thereof as against Howell, in whom the legal title rests. Howell denies this claim, and further alleges that the right of plaintiffs to enforce their alleged lien is barred by statute. The trial court found plaintiffs entitled to recover from the Luthers for the amount of the promissory note given by them, but ruled against the right of plaintiffs to a lien, except for the said sum of $112, representing the indebtedness for materials furnished the Luthers for the small building.

The defendant has not appealed from the establishment of the lien for the materials furnished for the small house, and it is, therefore, unnecessary to discuss the merits of that part of plaintiff's claim. The sole question left is whether a lien filed for the materials furnished for the large house is enforcible against Howell, a subsequent purchaser of the property. According to plaintiff's claim, the last item of materials for the larger house was delivered July 3, 1914. According to defendants' showing, that house was completed not later than December 20, 1913. The last item was furnished for the smaller house

on June 24, 1914. Now, on plaintiff's theory that all the materials for both houses were chargeable as a single account, and that the date of the last item therein was July 3, 1914, the 90-day period within which the statement for a lien could be filed, and maintain its priority as against subsequent purchasers and incumbrancers, expired not later than October 3, 1914. Code Section 3092. It was not filed until July 27, 1916,—1 year, 9 months, and 24 days after the expiration date, or 2 years and 24 days after the date when the right to file it accrued. It was within the interim after the expiration of the 90 days, and before the filing, that the mortgages to Boyd, Newcomb, and Howell were made. This is conceded by the appellant; but the effect of such concession is sought to be avoided in argument because Howell failed to show that in these transactions the mortgagees acted in good faith, without notice of the plaintiff's right to a lien. Unfortunately for this contention, it is the settled rule that the burden is upon the party claiming priority of a mechanics' lien under such circumstances to negative the good faith of the subsequent purchaser or incumbrancer. *Hoskins v. Carter*, 66 Iowa 638, 640. There is in this case no evidence tending to impeach the good faith of the mortgagees or of Howell. But there is another and sufficient ground for affirmance of the decree below. We think it quite clearly shown that the date from which plaintiff's right to file claim began to run was not later than December 20, 1913, and that the materials for the two houses are not properly chargeable in one continuous account. The plaintiff's manager or agent, who dealt with Luther, testifies that the arrangement or contract to furnish the materials for the larger house was made about October 1, 1913, and that, except for the item of screen doors, all the materials were supplied prior to December 20, 1913. What he has to say as to the small house is as follows:

"I had a conversation with Mr. Luther about those items in the spring of 1914, in which he said he wanted to build another house on the back end of his lot up there to rent, and he was going to let the contract for the material, all except the foundation, and he wanted to put that in by day labor. He wanted to know if I would furnish the foundation and put it

1. MECHANICS' LIENS: proceedings to perfect: belated filings: burden of proof.

right in with the other bill for the big house. * * * He told me he was going to build this second house right south of the big house on his property. I furnished the items of materials for the foundation of the second house on credit, and they were charged in the daybook.''

This testimony demonstrates that the building of the two houses was in separate transactions, under separate contracts; and this is none the less true even if it be conceded that Luther told the witness to charge such items in the old account. The two structures were different and independent improvements. The materials therefor were furnished under separate and independent contracts; and while plaintiffs were entitled to assert a mechanics' lien upon either or both, they could not, as against subsequent purchasers, prolong the period for filing their claim under the first contract by the expedient of charging therein the items furnished under the other and later contract for another building. *Hoag & Griffith v. Hay*, 103 Iowa 291. Such was the ruling of the trial court, and we think it must be approved.

2. MECHANICS'
LIENS: proceedings to perfect: separate contracts for separate buildings.

So, too, we hold that the charge for screen doors cannot serve to postpone the beginning of the 90-day period from December, 1913, to July, 1914. The contract as originally made was upon the basis of a prepared bill or list of the materials to be furnished; and there is no evidence that screen doors were there contemplated, or that, when the building was delivered to Luther, in December, either party claimed or supposed it was unfinished, or that anything was yet to be supplied by the plaintiffs. This would not be sufficient of itself, perhaps, to defeat an alleged lien, but it is a pertinent circumstance to be considered, in connection with the break in the continuity of the items for seven months, upon the question whether the purchase of the screen doors should be regarded as a part of the dealings between the parties, pursuant to their agreement of October, 1913, for the building of the larger house, or was entirely independent thereof. While there is no stated or fixed limit to the break in the continuity of an account which will suffice to defeat a mechanics' lien, it has been held that an

3. MECHANICS'
LIENS: proceedings to perfect: fatal break in account.

interim from August to the following March will have that effect in favor of a subsequent purchaser or incumbrancer. *Gilbert, H. & Co. v. Tharp,* 72 Iowa 716; *Buchanan v. Selden,* 43 Neb. 559 (61 N. W. 732); *Chase v. Garver Coal Co.,* 90 Iowa 25; *Flint v. Raymond,* 41 Conn. 510; *Dole v. Bangor Audit. Assn.,* 94 Me. 532; *Valley Lbr. & Mfg. Co. v. Driessel,* 13 Ida. 662 (93 Pac. 765, 15 L. R. A. [N. S.] 299).

This break in the account brings it in the class where "the space between the items is such as to raise the presumption that the work had once ceased, and the contract was completed." *Chase v. Garver Coal Co.,* supra. There is a large measure of equity in the rule which requires the claimant of a lien to act promptly in filing his statement, and refuses, except in a clear case, to permit him to prolong the time allowed therefor, by making a trifling or delayed item of charge in his account. *Crane Co. v. Ellis,* 58 Ore. 299 (114 Pac. 475); *Woodruff v. Hovey,* 91 Me. 116; *Sanford v. Frost,* 41 Conn. 617.

The holding of the trial court in this case, that the purchase of the screen doors did not serve to extend the time for filing a lien upon the building completed nearly seven months before, is justified upon both principle and authority. It follows that the plaintiff's right to a foreclosure of its lien for the materials furnished under its first contract with Luther is barred, not only by its failure to file the same within the 90-day period, but by the general statute of limitations as well; and that the decree appealed from must be affirmed. This conclusion renders unnecessary any consideration of the question of subrogation, discussed by counsel. The decree of the district court is—*Affirmed.*