CASLER ELECTRIC COMPANY, appellant, v. EDWARD M. CARLSEN et ux., appellees and cross-appellants.

No. 49298.

(Reported in 86 N.W. 2d 682)

December 17, 1957.

Goldberg & Nymann, of Sioux City, for appellant.

Crary & Crary, of Sioux City, for appellees and cross-appellants.

Oliver, J.—This is a suit by Casler Electric Company to establish and foreclose a subcontractor's mechanic's lien for $1284.21 for electric wiring and fixtures, against the home of defendants Carlsen, in Sioux City. Kochen & Ericsson, building contractors, entered into a written contract with defendant Edward M. Carlsen of date June 4, 1955, to furnish the labor and materials necessary to build the house. Carlsen, a plumber employed by a Sioux City plumbing company, had planned to furnish and install the plumbing, electric fixtures, etc., himself, and that part of the contract recited Kochen & Ericsson should furnish the labor and materials for the "rough electric wiring for interior of house", only.

Plaintiff, Casler Electric Company, had regularly furnished and was then furnishing the labor and materials for the electric wiring for various houses constructed by Kochen & Ericsson. Myron Casler testified Mr. Kochen gave him the order for the electric work on the Carlsen house by telephone: "The job was

given us on a time and material basis as we did all his work. By time and material I mean they were to be billed for the time consumed on the job, and the materials used."

Mr. Kochen testified that, when he gave the subcontract to Casler Electric Company, he told Myron Casler the contract with Carlsen provided the contractor was to do the rough wiring only. "Rough wiring includes the wiring into the house hooked up and electricity to all the outlets, switches and plugs." It includes the boxes and plates but no fixtures of any kind.

Myron Casler testified: "Rough wiring is just the basic work necessary on a dwelling or building so that the wall covering and ceilings can be installed, just so that we can get ahead of the other trades. That does not include switches, it does not include doorbells, it would not include the plates that go over the openings, those are finishing items. It wouldn't include the porchlight fixture, it wouldn't even include an electric meter. It wouldn't include hooking up a stove. That would be finishing, that wouldn't be rough wiring."

His testimony was based largely upon his interpretation of plaintiff's records. He was never "on the job" but assumed Casler Electric Company must have had the plans, and that their workmen, in some manner, must have been instructed what was to be done.

Casler Electric Company started the wiring June 27. The wiring was inspected and approved by the city August 11. Myron Casler testified, "Yes, it [the rough wiring] would be complete by then, I would say." The Carlsens moved into the house September 16, 1955, at which time they had electric lights and did their cooking with an electric appliance. Mr. Carlsen testified the wiring in the new house, with the exception of installing fixtures, had been completed by November 15, 1955, at which time he made the final payment to Kochen & Ericsson on their contract. He then "had no idea" Kochen & Ericsson had not paid plaintiff's bill for wiring the house.

Mr. Kochen testified they finished their work shortly before the end of August and did no further work after that time: "In my opinion it [the wiring] was finished. There might have been some repairs. So except in a case where they had to hook up an appliance I would say it was completed."

Late in September 1955 Carlsen went to plaintiff-company to arrange for the purchase and installation of electric fixtures. He spoke to Myron Casler who referred him to their stockman, a Mr. Griener. Carlsen testified he told Griener plaintiff had done the rough wiring for Kochen & Ericsson and he (Carlsen) wanted an estimate on fixtures: "I made it plain that we were paying for those fixtures, they were to be delivered to us." October 1, 1955, Casler Electric Company by Fred Griener addressed to Mr. Carlsen a written quotation, shown in evidence, for certain fixtures, less lamps, fluorescent tubes and installation of fixtures. Carlsen ordered these and other electric fixtures and subsequently they were installed for him by plaintiff-company. However, on plaintiff's books the fixtures and their installation were charged, not to Carlsen, but to Kochen & Ericsson.

Mrs. Carlsen testified she called Casler Electric Company in November in an effort to get a bill from them. She talked to one of the secretaries, told her the Carlsens had a bill with them and requested an itemized bill so she could check it. No bill was received from them.

Plaintiff contends it understood the furnishing and installation of fixtures were part of its contract with Kochen & Ericsson. Mr. Kochen testified he instructed plaintiff to the contrary and also that Kochen & Ericsson were never billed for the fixtures and that the prices charged for them on plaintiff's records were retail prices and not the discounted prices made contractors, to which Kochen & Ericsson would have been entitled had the sale been made to them. Myron Casler testified plaintiff quite often gives discounts on fixtures to general contractors but not to "slow paying customers", in which category the witness apparently placed Kochen & Ericsson.

Myron Casler testified he knew in the summer of 1955 that Kochen & Ericsson were having financial difficulties. November 17 their $1597.97 check to plaintiff was returned—no funds. A few days later this check was replaced with a valid bank cashier's check. At the end of 1955 the Kochen & Ericsson account with plaintiff was in arrears. Plaintiff's ledger shows that on February 29, 1956, this account was credited with $1284.21—for lien. A notation over this entry states, "Extra—Carlsen to pay

(424.36) Incl." The mechanic's lien for $1284.21, here in suit, was actually filed March 7, 1956.

Section 572.9, Code of Iowa, requires that a subcontractor's lien be perfected by filing, within sixty days from the date on which the last of the material was furnished or the last of the labor performed. If perfected thereafter by filing and giving notice to the owner it shall be enforced against the property only to the extent of the balance due from the owner to the principal contractor, etc.

In this case the main issue was whether plaintiff's subcontractor's $1284.21 claim for lien, filed March 7, 1956, was filed within sixty days from the date on which it furnished the last lienable items of material or labor on its subcontract. Plaintiff contends it furnished lienable items as a subcontractor, January 9, 1956, within the required sixty-day period. The last date prior to the date when plaintiff's records show any work or materials furnished for defendants' house was December 28, 1955, and before that December 14, 1955.

The district court disallowed the $1284.21 lien claimed by plaintiff as a subcontractor, because not perfected within the required sixty days, but permitted plaintiff to amend its petition to demand in the alternative, and the court established a lien against the property and rendered judgment against defendants for $424.36 for the fixtures plaintiff sold defendants and the completion of the wiring as a principal contractor. From this judgment plaintiff has appealed and defendants have cross-appealed.

I. Plaintiff's first proposition for reversal is:

"The trial court held the last items ($28.41 worth) were 'small and inconsequential'. The court held that because 'small and inconsequential' they could not be considered in computing the time for filing the lien."

Although the judgment entry recites the items furnished January 9, "were for small and inconsequential amounts and would in no event be such as to prolong the time for filing", the primary basis of its holding is: "The charge sheets and ledger sheets offered in evidence clearly show the later items on the billing were for fixtures and charges for installation of fixtures, and were not a part of the work of roughing in."

The $28.41 referred to by plaintiff is the charge for labor

and material furnished January 9, 1956, and is the only charge within the statutory sixty-day period. The judgment entry states the court believes these were in fact supplied in the year 1955. We find it unnecessary to determine that question, and will assume, without so deciding, that January 9 is the correct date.

Concerning the $28.41 charge, Carlsen testified: "All the time I figured that this all should be billed to me." Myron Casler testified: "The materials furnished on January 9 would be $10.81. * * * The total would be $28.41 on January 9." Of this total $17.60 was for labor.

At defendants' request plaintiff had separated its bill to show the charges made Kochen & Ericsson on this job and those made defendants. As thus separated, plaintiff's records disclose that on January 9, 1956, defendants were charged for four hours services of an electrician named Berens at the regular rate of $4.40 per hour, or $17.60. Hence none of the labor furnished by plaintiff January 9, 1956, was treated by plaintiff as having been performed on the subcontract upon which its claim for a mechanic's lien was based.

This leaves a charge of $10.81 for material furnished January 9, 1956. Plaintiff's records show the following itemized charges to defendants on that date for material: "1 copper beacon, $7.50, 2 20-Watt Fluro lamps @ .95, $1.90, 1 push button sw. .45." It is quite apparent these items were furnished on plaintiff's contract with defendants, and not upon its rough wiring subcontract.

The ninety-six cents balance of the total charge for January 9, 1956, consists of the following items: "loam wire, .20, 25 watt incandescent lamp .19, Ideal wire nuts .12, Push Button S.W. .45." The record indicates these items of material totaling ninety-six cents were charged to Kochen & Ericsson. Apparently, some of this was used for repairing or replacing parts which had developed defects or had been lost by workmen. Little or none of it is shown to have been used for rough wiring.

The substantial weight of the evidence shows plaintiff knew the rough wiring, only, was to be furnished defendants by Kochen & Ericsson. Moreover plaintiff was charged with knowledge of the terms of the principal contract upon this point. Garrison Grain & Lumber Co. v. Farmers Mercantile Co., 181 Iowa

568, 571, 572, 164 N.W. 791. The record clearly establishes plaintiff furnished work and material under two contracts, the first as a subcontractor to Kochen & Ericsson and the second as a principal contractor with defendants. Obviously, plaintiff had no right to tack the charges on the second contract to the first and thus extend the time within which its charges as a subcontractor might be enforced against defendants' property as a mechanic's lien. Nor could it prolong the time therefor by making a trifling or delayed charge as a subcontractor. Skemp v. Olansky, 249 Iowa 1, 9, 85 N.W.2d 580, 585; Nielson v. Buser, 207 Iowa 288, 291 et seq., 222 N.W. 856; Denniston & Partridge Co. v. Luther, 194 Iowa 464, 468, 469, 188 N.W. 664, 666; Canfield Lumber Co. v. Heinbaugh, 184 Iowa 149, 154, 168 N.W. 776; Milligan v. Zeller, 197 Iowa 79, 84, 85, 196 N.W. 793.

We concur in the holding of the trial court that plaintiff's lien as subcontractor was not perfected by filing within the sixty-day period required by statute.

II. Plaintiff's other proposition for reversal is, there was uncontradicted testimony defendants agreed they would be obligated to the full amount of the lien as a condition to plaintiff's aid in settling the accounts between the Carlsens and Kochen & Ericsson. In that connection counsel for plaintiff state in argument:

"There apparently was some confusion as to what appellees [defendants] still owed the general contractor. They asked Myron Casler to help them in determining that. Casler said that he wanted it understood that such co-operation from him would in no way prejudice his lien rights, and that Casler's help in determining that was for the sole purpose of helping Kochen & Ericsson and Carlsen arrive at their settlement."

This contention and argument overlooks the testimony of both Carlsen and Kochen that the former had paid the full balance of the contract price to Kochen & Ericsson, November 15, 1955, and owed them nothing. The record shows no controversy or confusion between these parties concerning their accounts. They had no settlement to "arrive at." The only confusion was in plaintiff's accounts caused by its intermingling of its charges against the principal contractor and the owners.

In March 1956, a few days after the mechanic's lien was

filed, Myron Casler, Edward Carlsen, Mr. Kochen and their lawyers had a meeting in the hope Kochen & Ericsson would be able to work out some sort of an arrangement with their creditors and continue in business. Mr. Kochen testified it was agreed "what parts of the [Casler bill] contract we would pay and what parts Ed Carlsen would pay, and at that time it was my understanding that we would pay for the rough wiring only."

Plaintiff takes the position the correction of its errors by the separation of the accounts was consideration for a claimed agreement with defendants that they would pay both accounts. Defendants were entitled to a correct statement of their account as a matter of right and there was no justification for attaching any such condition to furnishing it.

Plaintiff's ledger supplies some evidence the agreement in question was, defendant would pay plaintiff $424.36, the bill owed by them to plaintiff for its material and labor as a principal contractor. Although there is some conflict and uncertainty in the testimony concerning the meeting of the parties and the lawyers we conclude that what transpired there was not sufficient to make defendants responsible for an obligation for which they were not legally liable.

III. Defendants cross-appealed from the judgment against them for $424.36 and interest, and the establishment of said amount as a lien against their home. We are satisfied this part of the judgment was not erroneous. Defendants do not question the items of this part of the account. It clearly appears they owe this bill. The trial court properly refused to allow them to escape its payment. The court was empowered, in its legal discretion, to permit plaintiff to amend its pleadings to set up its claim for this relief.

Defendants complain also that all the court costs in the trial court were taxed against them. Although, as an original proposition, we might have made some division of such costs, we are not disposed to interfere with this action of the trial court. The costs upon appeal are ordered taxed two thirds to appellant and one third to cross-appellants.—Affirmed.

HAYS, C. J., and BLISS, WENNERSTRUM, GARFIELD, SMITH, LARSON, THOMPSON, and PETERSON, JJ., concur.