PATER PAINTER, INC., Plaintiff,

v.

The WILLIAM R. HIGGINS, JR. FOUNDATION, INC. et al, Defendants.

LUCAS HEATING & AIR CONDITIONING COMPANY, Appellant,

v.

The WILLIAM R. HIGGINS, JR. FOUNDATION, INC., Appellee.

No. 63976.

Supreme Court of Iowa.

Aug. 27, 1980.

R. Jeffery Lewis and Arthur E. Gamble of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellant.

Richard J. Barry of Greer, Nelson, Bertell, Montgomery & Barry, Spencer, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE, and McGIVERIN, JJ.

LeGRAND, Justice.

This appeal concerns the right of Lucas Heating & Air Conditioning Company (Lucas) to assert a mechanic's lien for material and labor furnished in constructing a building on property owned by The William R. Higgins, Jr. Foundation, Inc. (Higgins). The trial court found the claim was not timely filed and held Lucas was not entitled to a lien. Lucas appealed, and we affirm the judgment.

There were other parties to this litigation originally, both plaintiffs and defendants, but only Lucas and Higgins are interested in this appeal.

Higgins is an Iowa non-profit corporation. It operates a museum near Okoboji, Iowa, from Memorial Day to Labor Day each year for the exhibition of "valuable and unique" paper money remaining from

the period when national banks issued their own currency.

In 1975 Higgins contracted with Daniel R. Craft & Associates (Craft) for construction of the money museum. Craft subcontracted the heating and air conditioning work to Lucas at a total cost of $13,800.

Craft later got into financial difficulty and left the job before it was finished. No work was performed after April 1976. Lucas had billed Craft in January 1976 for "material on the job" in the amount of $8,100. In March 1976, Lucas had sent Craft a second bill for "material and labor complete" in the amount of $5,700. These two invoices together amounted to $13,800, the total contract price to which Lucas was entitled.

Nothing was done by Lucas on this job after March 1976 until June 23, 1976, when a $220 humidifier was installed in the building. The following day Lucas again billed Craft in the amount of $13,800 for "material and labor on job complete." Lucas claims a mechanic's lien for $13,800, asserting Craft paid nothing on the contract.

As a subcontractor, Lucas was required to perfect its mechanic's lien within sixty days under sections 572.8 and 572.9, The Code 1975, the pertinent parts of which we now set out:

572.8 *Perfection of lien.* Every person who wishes to avail himself of a mechanic's lien shall file with the clerk of the district court of the county in which the building, land, or improvement to be charged with the lien is situated a verified statement or account of the demand due him, after allowing all credits, setting forth:

1. The time when such material was furnished or labor performed, and when completed.

2. The correct description of the property to be charged with the lien.

572.9 *Time of filing.* The statement or account required by section 572.8 shall be filed . . . by a subcontractor within sixty days, from the date on which the last of the material was furnished or the last of the labor was performed. . . .

Lucas filed such a statement on June 30, 1976. The sole question presented is whether the filing was within sixty days from the date the "last of the material was furnished or the last of the labor was performed."

If, as defendant contends, work was completed in March 1976 when Lucas first rendered the bill for "material and labor complete," then the filing of the mechanic's lien was not timely. If, on the other hand, Lucas is right in insisting that the completion date was June 23, 1976, when the humidifier was installed, then the filing of the mechanic's lien was timely.

The question is not answered simply because Lucas, three months after rendering a "final" bill, installed a humidifier in the building. We must find this was a good-faith act to complete performance of the contract, not a dodge to revive a dead lien.

█ A subcontractor may not extend the time for filing by performing some trivial amount of work, remedying small defects, or making trifling changes. *Casler Electric Co. v. Carlson*, 249 Iowa 289, 295, 86 N.W.2d 682, 686 (1957); *Skemp v. Olansky*, 249 Iowa 1, 8–9, 85 N.W.2d 580, 584 (1957); *Nielson v. Buser*, 207 Iowa 288, 291–92, 222 N.W. 856, 858 (1929).

The trial court found Lucas had completed its subcontract in March of 1976 and had failed to file notice of lien within sixty days. We quote from the trial court's opinion:

Lucas had completed its subcontract with Craft in March of 1976 except for the installation of a $220 humidifier. Lucas was aware Craft had abandoned the museum project in April of 1976. He had billed Craft for the full subcontract price. All that remained was to install the humidifier. The court concludes Lucas made no real effort to secure and install the humidifier until June of [1976]. Both Lucas and Craft had abandoned the project. The securing and installing of a $220 humidifier on June 23, [1976], was merely an attempt to extend the mechanic's lien filing date. A court should not grant equitable relief to a claimant who

executes mechanic lien waivers in blank which are then completed by the contractor and submitted to the owner for progress payment, who advises the property owner that he did not do work for the general contractor until he was paid, and who then submits a job invoice showing all material and labor having been completed in March and then later claims the last item was furnished three months later.

■ This is an equity action and our review is de novo. We mention parenthetically that Lucas does not seek to enforce the lien under the provisions of section 572.10, The Code 1975. Recovery must be had under section 572.9 or not at all.

We have reviewed the record and conclude the trial court reached the right result. The testimony is in sharp dispute on the circumstances under which the humidifier was finally obtained and installed three months or more after the job was labeled "final and complete." However, apart from the direct testimony of the principals, all of the evidence belies Lucas' version and supports that of Higgins.

■ The contract specifications make no mention of a humidifier and the one ultimately installed has never been used in the two years the museum had operated; the job had been abandoned by Craft about the time Lucas first submitted a "final and complete" bill; Lucas was aware of Craft's financial plight before installing the humidifier; Lucas had signed lien waivers in blank for Craft and Higgins had made partial payment to Craft relying thereon; Lucas had told Higgins no work was done for Craft without first being assured of payment; Lucas usually billed only when a job was complete; Lucas made no effort (although there is some contrary evidence) to obtain a humidifier until long after certifying the job as complete; despite testimony the right humidifier was unavailable after long search, one was suddenly and fortuitously found in Des Moines; interest was charged beginning at least two months before Lucas now says the job was complete; there are no written records or mem-

oranda to support Lucas' theory. What meager written records exist tend to refute the lien. None of these circumstances is alone controlling, but, taken together, they persuade us the equities lie, not with Lucas, but with Higgins.

We find Lucas' subcontract was complete in March 1976 and that the additional work done in June of 1976 was, as the trial court found, merely an attempt to extend the mechanic's lien filing date.

The judgment is affirmed.

AFFIRMED.