**911 GLEN OAK APARTMENTS, Appellant,**

v.

**Darrell WALLACE and All Other Occupants, Appellees.**

**No. 13–01–143–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

July 11, 2002.

Edward M. Lavin, San Antonio, for appellant.

Rebecca G. Flanigan, Corpus Christi, for appellees.

Before Justices DORSEY, YAÑEZ, and CASTILLO.

## OPINION

DORSEY, Justice.

Darrell Wallace is a resident of 911 Glen Oak Apartments ("Glen Oak"). Glen Oak is the owner of multi-family housing, subsidized by the Department of Housing and Urban Development (HUD) and subject to its rules. Glen Oak filed suit in justice court seeking to evict Wallace because she allegedly: held over the premises following a notice of non-renewal of her lease; failed to timely pay rent; and she was involved in multiple loud disturbances at the complex. Glen Oak prevailed in the justice court, and Wallace perfected an appeal from that judgment to the county court at law. Following a bench trial the trial court entered judgment for Wallace. The question on appeal is whether Wallace's conduct gave Glen Oak a reason not to renew her lease, and thus, evict her from the premises. We affirm.

## I. ANALYSIS

By three issues Glen Oak argues that the trial court erred in failing to order Wallace's eviction, because (1) she was a hold-over tenant at sufferance, (2) she was in material non-compliance with the lease for failing to pay rent for November, 2000, and (3) she was involved in multiple loud disturbances and disruptions, which disturbed the peace and quiet enjoyment of the premises, each of which constituted a material non-compliance with the lease. At the heart of this case is whether Wallace's conduct gave Glen Oak a reason not to renew her lease and the trial judge's view of that evidence. We answer this issue by examining the terms of the lease and the evidence adduced at trial.

## I. THE LEASE

Paragraph 2 of the lease stated that "After the initial term ends, the Agreement will continue for successive terms of one month each unless *automatically terminated* as permitted by paragraph 23 of this Agreement." (emphasis added). Paragraph 23, subsection b states: "Any termination of the Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement." This subsection allowed the landlord to terminate the lease only for those reasons listed in the agreement. Relevant to the facts of this case these reasons are: (1) the tenant's material non-compliance with the lease terms; or (2) the tenant's material failure to carry out obligations under any state landlord and tenant act; or (3) criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants; or (4) "other good cause [1]. . . . Terminations for 'other

---

1. Section 1715z–1b(b)(3) of the United States

Code states, "leases approved by the Secre-

good cause' may only be effective as of the end of any initial or successive term."

## II. THE CONFLICTING EVIDENCE

### *Glen Oak's Evidence*

During trial of this case Glen Oak introduced into evidence a notice of non-renewal of the lease, which it had sent to Wallace. The notice told her that Glen Oak would not renew her lease and that the lease was terminated effective October 31, 2000. The reason for termination was material non-compliance with the lease and related documents and HUD rules. The notice listed numerous incidents, beginning on April 14, 2000. These incidents concerned (1) Wallace's children violating curfew, creating a disturbance, and showing disrespect to other residents, (2) Wallace, her occupants, and/or guests creating disturbances involving loud music late at night, (3) on July 4, 2000, Wallace, her occupants, and/or guests consuming alcohol and creating a loud disturbance in public areas of the complex, and (4) Wallace swinging a golf club at other residents or guests. Several of these incidents required police intervention.

Shelia Vanecek, manager of Glen Oak Apartments, testified that Wallace was required to pay rent for November, 2000, but failed to pay it. Vanecek stated that she had received complaints about Wallace's temper, loud music, disturbances, and consumption of alcohol outside the apartment unit, all of which are serious violations of the lease. She gave several examples of Wallace's behavior as follows: (1) Wallace was reported to have swung a golf club on the premises; (2) when Wallace's car was being towed from the complex, she came into the manager's office irate and cursing; (3) when Wallace discovered that Glen Oak's management removed items from her balcony, she became upset and used foul language; and (4) Wallace's children were out after curfew, making a disturbance, and showing disrespect to other residents.

On cross-examination Vanecek denied refusing to accept rent from Wallace. Her testimony was that Wallace's behavior threatened the health or safety of other tenants.

Glen Oak called three other witnesses to testify about Wallace's behavior at the complex. Eudelia Soto testified that she saw Wallace at the complex, swinging a golf club while a lot of children were around. Her testimony was that Wallace used the club as a weapon and "went at [a tenant] with the golf club."

Gwen Monroe, Wallace's neighbor, testified that Wallace caused disturbances ranging from loud music to verbal outbursts. On one occasion Monroe called 911 to report a disturbance that occurred at a party Wallace was having. These disturbances usually occurred after 10:00 p.m. and disturbed Monroe's peace and quiet enjoyment. She denied telling Pam Forbes anything about getting Wallace out of Glen Oak.

Vicky Ratliff lived next door to Wallace. She had made several complaints about the conduct of Wallace and her occupants or guests. She complained that Wallace played loud music after 10:00 p.m. This noise disturbed her and her children. In April, 2000, Wallace yelled at Ratliff, telling her that she "wrote her [Wallace] up

---

tary provide that tenants may not be evicted without good cause or without adequate notice of the reasons therefor and do not contain unreasonable terms and conditions." 12 U.S.C. § 1715z–1b(b)(3). The regulation im-

plementing this statute states that no tenancy in the relevant federally subsidized program shall be terminated without good cause. 24 C.F.R. 247.3(a) (2001).

and got her in trouble." Ratliff called the police numerous times complaining about Wallace's loud music.

### Wallace's Evidence

Wallace had lived at Glen Oak Apartments for fourteen years. She said that she tried to pay her November rent, but the landlord would not accept it. She believed that the numerous disturbances listed in the notice to vacate were based on the complaints of one neighbor with either unreasonable sensitivities and expectations and/or a bias against her. She did not believe that she violated her lease. Her testimony was that management was trying to evict her for personal reasons related to the relationship between her son and the manager's daughter. When asked if her children violated curfew she said that they did come home late one night from a church meeting and were talking outside Vicky Ratliff's window. This caused Ratliff to holler and scream at them. She admitted to having a Fourth of July party, saying it involved "no violent disturbance." She denied swinging a golf club at anybody at the complex, and she denied swearing at anyone when her car was towed.

Letonia Jackson, a former resident of Glen Oak, saw Wallace grab a golf club from Wallace's grandson, but did not see her swing it at anybody. She did not know Wallace to be noisy, disturbing, or to cause problems in the apartment units.

Pam Forbes, a former Glen Oak resident, lived in the apartment above Wallace. She never heard lots of noise or loud music. Her testimony was that Gwen Monroe told her that "they were planning to get Ms. Wallace out."

Wallace's daughter, Kimberly, was a former Glen Oak resident and had lived in a separate unit above her mother. Kimberly never had problems with noise or music coming from Wallace's apartment.

Michelle Garza's testimony was that she had Wallace's children from May 28, 2000, to August 8, 2000. During this time the children did not return to Glen Oak Apartments. She stated that Wallace provided the children a good, stable, safe home environment.

Glen Oak argues that its evidence demonstrated good cause for its decision not to renew Wallace's lease and that good cause is not as stringent a standard as "material non-compliance." Glen Oak points out that the Houston First Court of Appeals has defined good cause to include "but not be limited to non-eligibility for tenancy, action or conduct of the resident which disrupts the livability of the project by adversely affecting the health or safety of any resident, or the right of any resident to the quiet enjoyment of the leased premises and related project facilities or that has an adverse financial effect on the project." [2] Wallace points out that HUD Handbook 4350.3 addresses the standard for good cause. HUD Handbook 4350.3 § 4–20 CHG–22 (June 1992). That section provides, "HUD does not determine whether a particular situation constitutes good cause. Any issue regarding the existence of good cause is resolved in the landlord-tenant court in an action for eviction of the tenant." HUD Handbook 4350.3 § 4–20 CHG–22 (June 1992).

■ We point out that even though good cause may be a less stringent standard than material non-compliance, the evidence in this case does not demonstrate good cause as a matter of law to support

**2.** Citing *Callahan v. Trinity Arms, Ltd.,* 1992 WL 179698 (Tex.App.-Houston [1st Dist.] 1992, no writ) (not designated for publication).

Glen Oak's decision not to renew the lease. After hearing the evidence the trial court entered judgment that Glen Oak take nothing by its suit. The court made the following relevant findings of fact: (1) the evidence was insufficient to prove a lease violation; (2) both parties provided evidence concerning the claims put forward by Glen Oak for the eviction and that there was conflicting evidence concerning most of the testimony provided; (3) Glen Oak failed to meet their burden in establishing that there had been a lease violation for claims of numerous loud disturbances that threatened the health and safety of other tenants or their quiet enjoyment of the property; and (4) Glen Oak failed to meet their burden to establish that there had been a lease violation for late payment of rent. After reviewing all the evidence we find some evidence of probative value to support the trial court's findings. We also find that the findings are not so contrary to the overwhelming weight and preponderance of the evidence that they are clearly wrong and manifestly unjust, nor do we find that the great preponderance of the evidence supports their nonexistence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1952).

### Tenancy At Sufferance

A tenant who remains in possession of the premises after termination of the lease occupies "wrongfully" and is said to have a tenancy at sufferance. *Bockelmann v. Marynick,* 788 S.W.2d 569, 571 (Tex.1990). Accordingly Wallace would have a tenancy at sufferance only if she remained in possession of the premises *after termination of the lease.*

Here Paragraph 2 of the lease stated that when the initial lease term

ended, the lease was to continue for successive terms of one month each unless automatically terminated as permitted by paragraph 23. By its terms the lease expired June 30, 1998; therefore, the lease continued for successive terms of one month each, and Wallace was a month-to-month tenant. The trial court determined that Glen Oak could not terminate the lease. Moreover, when deciding whether a landlord may terminate a lease involving federally subsidized housing as in this case, landlords may not refuse to renew a lease solely because the term has expired. *Newhouse v. Settegast Heights Village Apartments,* 717 S.W.2d 131, 134 (Tex. App.-Houston [14th Dist.] 1986, no writ). Accordingly Glen Oak could not refuse to renew the lease due to its expiration. We hold that the trial court did not err in failing to find that Wallace was a hold-over tenant at sufferance. We overrule the three issues.

We AFFIRM the trial court's judgment.