**HORIZON HOMES OF DAVENPORT, Appellee,**

**v.**

**Sylvia NUNN, Appellant.**

No. 02–1420.

Supreme Court of Iowa.

July 21, 2004.

Tommy Miller of H.E.L.P. Legal Assistance, Davenport, for appellant.

Steven J. Havercamp of Stanley, Lande & Hunter, Davenport, for appellee.

LAVORATO, Chief Justice.

In this discretionary review from a forcible entry and detainer action, we must decide whether good cause is necessary for the nonrenewal of a lease for an apartment in a federally subsidized housing project. In a small claims ruling, the magistrate concluded such good cause was necessary. On appeal to the district court, the district associate judge ruled otherwise. We disagree with the latter ruling, and for that reason reverse.

## I. Background Facts and Proceedings.

The federal government has established various types of programs that provide through various mechanisms subsidized rental units for low income families. *See* U.S. Dep't of Hous. & Urban Dev., *Programs of HUD* (2003) (outlining programs). The statutory basis for the federal low-income housing program in this case is split between Section 8 of the United States Housing Act of 1937, *amended by* 42 U.S.C.A. § 1437f (West 2001) [hereinafter Section 8] and Section 236 of the National Housing Act, *amended by* 12 U.S.C.A. § 1715z–1 [hereinafter Section 1715z–1].

As described by one court, Section 8

is designed to provide safe and sanitary low-income housing to qualified recipients. The general philosophy of Section 8 is that appropriate housing can best be supplied through a combination of federal, local, and private efforts. The Secretary of Housing and Urban Development ("HUD") is the federal officer primarily responsible for implementing Section 8.

Section 8 operates in part through the existing housing assistance payments ("HAP") program. The HAP program is a rent subsidy program. It employs a system of contracts involving HUD, local public housing authorities ("PHA's"), private landlords and qualified tenants.

*Gallman v. Pierce,* 639 F.Supp. 472, 473 (N.D.Cal.1986) (citations omitted).

There are two types of assistance for renters under the federal housing programs: project-based assistance and tenant-based assistance. Project-based assistance is tied to a particular housing project. *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 161 n. 2 (3d Cir. 2002). Under project-based assistance, the Department of Housing and Urban Development (HUD) makes housing assistance payments to owners to make up the difference between what the tenant pays in rent and the total amount of rent for the housing unit. Participants in the program make rental payments based on their income and ability to pay. *Id.* at 161.

In contrast, under tenant-based assistance, HUD pays the participants vouchers

entitling the participant to select a unit anywhere in the public housing authority's (PHA) jurisdiction. *Id.* at 161 n. 2.

Like Section 8, "Section 236 of the National Housing Act, as amended, (12 U.S.C.A. § 1715z–1) is a statutory scheme seeking to achieve improved housing at reduced rentals for low and middle income families." *Green v. Copperstone Ltd. P'ship*, 28 Md.App. 498, 346 A.2d 686, 690 (1975). Under Section 236, private owners of multi-family apartment complexes receive subsidies from HUD in the form of reduced interest on the mortgages covering the apartment complexes or housing payments for tenant-based assistance or project-based assistance. *See* 12 U.S.C.A. § 1715z–1 et seq.; 24 C.F.R. § 247.2 (2001) (defining a subsidized project as one receiving the benefit of subsidy in the form of below-market interest rates, interest reduction payments, or below market interest rate direct loans).

Sylvia Nunn entered into a lease agreement with Horizon Homes of Davenport (Horizon) in November 1997. According to the lease, Nunn was a qualified Section 8 recipient and received project-based assistance from HUD in the form of a reduced rent obligation to Horizon. As to this reduced rent obligation, the lease stated: "This lower rent is available either because the mortgage on this project is subsidized by the Department of Housing and Urban Development (HUD) and/or because HUD makes monthly payments to the Landlord on behalf of the Tenant." Accordingly, Horizon is bound by the provisions of Section 1715z–1 and the regulations implementing this statute. *See* 12 U.S.C.A. § 1715z–1; 24 C.F.R. § 247.2.

Paragraph two of the lease provided:
The initial term of this Agreement shall begin on 11/03/97 and end on 10/31/98. After the initial term ends, the Agreement will continue for successive terms of one <u>month</u> each unless automatically terminated as permitted by paragraph 23 of this Agreement.

(Handwritten in original.)

Paragraph 23 of the lease as it pertained to the tenant and landlord provided in relevant part:

23. Termination of Tenancy:

a. To terminate this Agreement, the Tenant must give the Landlord 30–days written notice before moving from the unit. . . .

b. Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement. The Landlord may terminate this Agreement only for:

(1) the Tenant's material noncompliance with the terms of this Agreement;

(2) the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act; or

(3) criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a tenant, any member of the tenant's household, or any guest or other person under the tenant's control; or

(4) expiration of the section 8 Housing Assistance Payments Contract between the Owner and HUD; or

(5) other good cause, which includes, but is not limited to, the Tenant's refusal to accept the Landlord's proposed change to this Agreement. Terminations for "other good cause" may only be effective as of the end of any initial or successive term.

Nunn satisfied the initial term of the lease and was living on the premises on a month-to-month basis.

On October 9, 2001, Horizon notified Nunn in writing that it would not renew her month-to-month lease as of midnight on November 30, 2001. Horizon gave no reason for its refusal to renew Nunn's lease. Nunn did not vacate the premises, prompting Horizon to file a small claims action for forcible entry and detainer.

Following a hearing before Magistrate Cynthia Z. Taylor on January 8, 2002, the magistrate denied the action. Among the reasons for denying the action, the magistrate noted that the HUD handbook on termination provides that "Owners must not refuse to renew a lease solely because a lease term has expired." The magistrate also noted that HUD regulations for public housing, Section 8 project-based programs specifically prohibit eviction based solely on the expiration of a lease.

Horizon appealed the ruling. Following a hearing, District Associate Judge Mary E. Howe reversed the magistrate's ruling. The judge concluded that under Iowa law "a nonrenewal of the lease is allowed" and "[o]nce the initial lease term has expired [Horizon] can give the 30–day notice to [Nunn]." The judge also concluded that Nunn's position that "the lease cannot be nonrenewed when it goes to a month-by-month situation would be contrary to Iowa law" and there is "no federal law or federal statute that does not allow the nonrenewal of the lease once it is on a month-to-month basis."

We granted Nunn's application for discretionary review.

## II. Issues.

Nunn raises the following issues:

(1) The federal statute implemented by federal regulations and the HUD handbook mandate that a month-to-month project-based lease can be terminated by the owner only for "good cause."

(2) Nunn's month-to-month project-based lease provides that the lease can be ended by the landlord only by a showing of "good cause."

(3) There is no Iowa law that prohibits a "good cause" requirement to terminate a lease.

In response, Horizon cites three arguments to support the district associate court's ruling. First, Nunn's interpretation runs contrary to other states' interpretation of the federal regulations. Second, the regulations clearly apply only to tenant evictions, not to natural expirations of leases. Last, Nunn's interpretation of the regulations would create a perpetual lease which Iowa cases strongly disfavor.

## III. Scope of Review.

Because Iowa Code section 648.5 (2001) provides that forcible entry and detainer actions are to be tried as equitable actions, our scope of review is de novo. Iowa R.App. P. 6.4. The interpretation of statutes is reviewed for errors at law. *State v. McCoy*, 618 N.W.2d 324, 325 (Iowa 2000).

## IV. Analysis.

**A. Background.** According to one writer, "[w]hen local public housing authorities ("PHAs") were created in response to the United States Housing Act of 1937 (to provide local administration for public housing programs), they were subject only to state landlord-tenant laws." Marc Jolin, *Good Cause Eviction and the Low Income Housing Tax Credit*, 67 U. Chi. L.Rev. 521, 530 (2000) (footnotes omitted) [hereinafter Jolin]. As a result, PHAs "enjoyed almost unchecked power to evict tenants." *Id.* This unchecked power ended with the Supreme Court's ruling in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), when the

Court held "that terminating a recipient's welfare benefits without providing the recipient with a pre-termination eligibility hearing constituted a violation of that person's due process rights." *Id.* at 531.

Shortly after *Goldberg*, federal circuit courts extended the *Goldberg* reasoning to the public housing context, holding that the government could not deprive a tenant of such housing of a continued tenancy without affording the tenant adequate procedural safeguards. *Id.* (citing *Escalera v. New York Hous. Auth.*, 425 F.2d 853, 861 (2d Cir.1970)). The Fourth Circuit in *Joy v. Daniels*, 479 F.2d 1236, 1240–42 (4th Cir.1973) took the final step, holding that for procedural protections to have any meaning, the landlord had to show good cause to justify the termination of a tenancy, irrespective of the terms of the lease and even though the initial term of the lease had expired. Other courts followed suit. *See, e.g., Gallman*, 639 F.Supp. at 482; *Green*, 346 A.2d at 697 (involving project-based tenant under § 1715z–1); *Greenwich Gardens Assocs. v. Pitt*, 126 Misc.2d 947, 484 N.Y.S.2d 439, 442 (Dist. Ct.1984). These judicial decisions resulted in the good cause eviction protection being incorporated into federal regulations of all the major federal housing programs. Jolin, at 531–32.

**B. The federal statute, regulations, and HUD handbook.** Section 1715z–1b(b)(3) mandates a "good cause" for termination of project-based leases, the type of lease agreement Nunn and Horizon executed:

(b) **Rights of tenants**

The Secretary shall ensure that—

. . . .

(3) leases approved by the Secretary provide that tenants may not be *evicted* without good cause or without adequate notice of the reasons therefore . . . .

12 U.S.C.A. § 1715z–1b(b)(3) (emphasis added).

The federal regulation implementing this statutory provision provides:

(a) **General.** The landlord may not terminate any tenancy in a subsidized project except upon the following grounds:

(1) Material noncompliance with the rental agreement,

(2) Material failure to carry out obligations under any state landlord and tenant act,

(3) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents . . . .

(4) Other good cause.

No termination by a landlord under paragraph (a)(1) or (2) of this section shall be valid to the extent it is based upon a rental agreement or a provision of state law permitting termination of a tenancy without good cause. No termination shall be valid unless it is in accordance with the provisions of § 247.4.

24 C.F.R. § 247.3(a). The conduct of a tenant cannot qualify as "other good cause" unless the landlord has given the tenant notice that such conduct shall constitute a basis for termination of occupancy. *Id.* § 247.3(b).

As to eviction, federal regulations provide that "[t]he landlord shall not evict any tenant except by judicial action pursuant to State or local law and in accordance with the requirements of this subpart." *Id.* § 247.6(a). 24 C.F.R. § 247.2 (Definitions) defines eviction as

the dispossession of the tenant from the leased unit as a result of the termination of the tenancy, including a termination

prior to the end of a term or at the end of a term.

24 C.F.R. § 247.2.

■ The statute and regulations cited plainly require good cause for the termination of not only the initial term but also the month-to-month tenancy. We reach that conclusion for reasons that follow.

■ The statute says the leases must have provisions that ensure a tenant may not be *evicted* without good cause or without notice of adequate reasons pertaining to such good cause. Eviction is a legal remedy sought by the landlord as a result of the termination of the tenancy. Under Iowa law, a periodic tenancy is one that endures for a certain period and will continue for subsequent like periods unless terminated by one of the parties at the end of the period. Such a tenancy includes a month-to-month tenancy. *Sunset Mobile Home Park v. Parsons,* 324 N.W.2d 452, 455 (Iowa 1982). That is exactly what we have in this lease. Because the lease provided for a month-to-month tenancy, 24 C.F.R. § 247.3, which prohibits termination of a tenancy except for good cause, prevented Horizon from terminating this lease simply because the initial term had lapsed. Horizon had to show good cause and specify those grounds constituting good cause in its notice of termination. It failed to do either. *See Goler Metro. Apartments, Inc. v. Williams,* 43 N.C.App. 648, 260 S.E.2d 146, 150 (1979) (reaching the same conclusion using the same reasoning).

Moreover, the HUD handbook states in its section on termination of tenancy, "An owner must not refuse to renew a lease solely because a lease term has expired." HUD Occupancy Handbook, Directive No. 4350.3, 8–12(C). The handbook also states, "Termination of tenancy is the first step in the eviction process and is often used interchangeably with the term *evic-*

*tion." Id.* at 8–1(B). The handbook defines "Termination of Tenancy" as follows:

Termination of tenancy occurs when a tenant violates specific provisions of the lease agreement, and the owner notifies the tenant that he/she no longer has the right to occupy the unit as a result of lease violations. The HUD model leases have very specific conditions under which tenancy may be terminated and procedures that must be followed during the termination process.

*Id.* at Glossary.

■ Although some federal courts have held that HUD handbooks do not have the force of law, *see, e.g. Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.,* 695 F.2d 366, 371 (9th Cir.1982), the Eighth Circuit has adopted the following approach:

This handbook, although not adopted by administrative rule subject to notice and comment, is entitled to notice as the agency's interpretation of its own regulations and should be accepted by us unless there is a showing that the handbook is unreasonable or inconsistent with statutory authority.

*United States v. City of St. Paul,* 258 F.3d 750, 753 (8th Cir.2001). We think the Eighth Circuit's approach is a reasonable one and we adopt it.

In our opinion, Horizon has not shown that the HUD handbook as cited and quoted above is unreasonable or inconsistent with statutory authority.

Finally, the lease agreement here provided that the lease could *only* be terminated in accordance with paragraph 23 of the lease which mirrors the good cause grounds in 24 C.F.R. § 247.3(a). Under the lease agreement, the original term was for one year, after which the lease would be for successive terms of one month until

terminated by the tenant with thirty days notice, or by the landlord for "good cause" in accordance with paragraph 23. In addition, subparagraph 5 of paragraph 23 states that "[t]ermination for 'other good cause' may only be effective as of the end of any initial or *successive term.*" (Emphasis added.) By the plain language of the lease, the landlord could not terminate Nunn's month-to-month tenancy except for good cause as defined in the lease.

The same HUD-mandated paragraph 23 as found in Nunn's lease was at issue in *911 Glen Oak Apartments v. Wallace,* 88 S.W.3d 281 (Tex.App.2002). Interpreting the same federal statute—12 U.S.C.A. § 1715z–1b(b)(3)—and regulations at issue here, the court concluded for two reasons that the landlord could not terminate the lease except for good cause as stated in the lease. First, the lease by its terms prevented such termination. And second, "when deciding whether a landlord may terminate a lease involving federally subsidized housing as in this case, landlords may not refuse to renew a lease solely because the term has expired." *911 Glen Oak Apartments,* 88 S.W.3d at 285.

For all of these reasons, we conclude Horizon could not terminate Nunn's month-to-month tenancy for the simple reason that the lease had expired. To terminate such tenancy, Horizon was obligated to show good cause as defined in paragraph 23. The district court erred in concluding otherwise.

In reaching our decision we reject Horizon's and the district court's reliance on two state court decisions interpreting federal regulations contrary to the conclusion we reach. Unlike Horizon and the district court, we do not deem those decisions persuasive because the reasoning in both cases is faulty. The rationale in both cases was that a landlord seeking repossession at the expiration of a term of the fixed lease does not terminate the tenancy, but merely seeks possession pursuant to the termination that has otherwise taken place. *See Anoka County Cmty. Action Program v. Allen,* No. C5–00–1147, 2001 WL 184910 (Minn.Ct.App. Feb.27, 2001); *Houle v. Quenneville,* 173 Vt. 80, 787 A.2d 1258 (2001). This reasoning is contra to our own interpretation of the lease's month-to-month tenancy in relation to the statute and regulations we have discussed. It is also contra to the case authority and the HUD handbook, which we have also discussed.

That leaves for our consideration Horizon's final argument for upholding the district court's decision.

**C. Perpetual lease.** As mentioned, the district court rejected Nunn's position that her tenancy could not be terminated except for good cause defined in paragraph 23 of the lease. One of the grounds given was that this position is contrary to Iowa law. On appeal, Horizon attempts to flesh out this conclusion by contending Nunn's position would in effect create a perpetual lease, something that is not favored in Iowa law.

It is true that Iowa law does not favor perpetual leases and that language creating one must be clear, unequivocal, and unmistakable to be enforceable. *Petty v. Faith Bible Christian Outreach Ctr., Inc.,* 584 N.W.2d 303, 306 (Iowa 1998).

The requirement that the parties' intent be unmistakable protects "property owners from inadvertently leasing away their property forever." Thus, unless a lease uses language such as "perpetual," "in perpetuity" or "forever," courts usually construe the lease as providing for only one renewal.

*Howard v. Schildberg Constr. Co.,* 528 N.W.2d 550, 555 (Iowa 1995) (citations omitted) (footnote omitted).

Nunn's lease does not contain the "magic" words of perpetual, in perpetuity, or forever. Nevertheless, we reject Horizon's contention for two reasons. First, Nunn's lease is not a perpetual lease. As mentioned, the lease provides several grounds for termination, any one of which would be sufficient to terminate the lease. Moreover, a landlord has the ability to modify the lease, including the rent pursuant to 24 C.F.R. § 247.4(d), which provides in relevant part:

> Notwithstanding any other provision of this subpart [termination notice], the landlord may with the prior approval of HUD modify the terms and conditions of the rental agreement, effective at the end of the initial term or a successive term, by serving an appropriate notice on the tenant, together with the tender of a revised rental agreement or an addendum revising the existing rental agreement.... The tenant may accept the modified terms and conditions by executing the tendered revised rental agreement or addendum, or may reject the modified terms and conditions by giving the landlord written notice in accordance with the rental agreement that he intends to terminate the tenancy.

■ Second, we agree with Nunn that the federal housing law preempts Iowa law in enforcement of HUD project leases. Preemption is defined as

"[t]he principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation."

*Black's Law Dictionary* 1216 (8th ed.2004).

We have said that "federal law will not preempt state law 'absent a clear statement of congressional intent to occupy an entire field' or unless applying state law would conflict with or otherwise frustrate a federal regulatory scheme." *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 146–47

(Iowa 2002) (citation omitted). Given the regulatory scheme that governs the HUD leases in question, we think the Iowa doctrine of perpetual leases would conflict with or otherwise frustrate that scheme. *See Forest Park v. Hadley*, 336 F.3d 724, 733 (8th Cir.2003) (federal housing law preempted state law that was in conflict with it on the basis of implied preemption).

## V. Disposition.

Because we conclude that the landlord here could not terminate the month-to-month tenancy except for good cause shown as explained in the lease, we reverse the district court's ruling to the contrary.

**REVERSED.**

All justices concur except LARSON, J., who takes no part.