**IN THE COURT OF APPEALS OF IOWA**

No. 25-0530
Filed June 18, 2025

**IN THE INTEREST OF R.G.,**
**Minor Child,**

**N.H., Mother,**
    Appellant,

**A.R., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

A mother and father separately appeal from an order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Derek E. Johnson, Iowa City, for appellant mother.

Karina A. Miller of Astrea Legal LLC, Iowa City, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Joseph C. Pavelich, Iowa City, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

The district court terminated the parental rights of the mother, legal father, and biological father of three-year-old R.G. The biological parents separately appeal.[1] The father challenges the statutory ground relied on by the district court to support termination. And both contend termination is not in the child's best interests, that the district court should have granted additional time for reunification efforts, and their bond with the child should preclude termination. The mother also challenges the reasonable efforts finding by the district court.

**I.      Background Facts and Prior Proceedings**

R.G., born in October 2022, came to the attention of the Iowa Department of Health and Human Services (the department) in September 2023 after the department received allegations that both the mother and her live-in boyfriend were using methamphetamine while caring for R.G. and her two brothers, born in 2016 and 2019.[2] R.G. was often in the primary care of the mother's boyfriend. A child abuse assessment completed in September 2023 was founded against the mother's boyfriend for dangerous substances as he was determined to be using methamphetamine while residing in the same home as R.G. and caring for her.[3]

---

[1] The biological father's appeal was filed after the fifteen-day deadline. Upon application, our supreme court granted the father a delayed appeal. As the legal father does not appeal, further references to R.G.'s father refer to the biological father.

[2] While the mother's boyfriend was originally believed to be the biological father of R.G., he was later excluded by genetic testing. R.G.'s brothers and R.G. have different fathers.

[3] Prior to R.G.'s birth, the mother and the father of R.G.'s brother were twice involved with the department and the court. A child-in-need-of-assistance (CINA) petition was filed in November 2016, after it was alleged that the father of the boys whipped the mother with an electrical cold, pulled her down the stairs, and strangled her in the presence of the child. The case was closed after about a year.

The mother tested negative for substances during this assessment. All three children were listed as victims.[4]

R.G. and her brothers were adjudicated as CINA. The adjudication order noted that the boys were residing with the paternal grandmother under a safety plan and that R.G. was residing with the mother, also under a safety plan. But the court noted it "was concerned about these safety plans" and intended to address placement at the dispositional hearing.

Following disposition, custody of R.G.'s brothers was placed with the department for relative placement, while R.G. remained with her mother under a safety plan. After the father of R.G.'s brothers was released from prison and moved to the same home as the placement for the boys, a trial home placement was initiated with the mother for R.G.'s brothers. As a result, the mother had all three children back in her home.

But less than a month later, an application for emergency removal of all three children was granted by the court. The application noted that when law enforcement served a warrant on the mother's boyfriend for child pornography, the mother's boyfriend was completely naked with the children in the home. Additionally, law enforcement discovered a needle loaded with methamphetamine

A second CINA case began in February 2019, as the mother and one of R.G.'s brothers were staying with a registered sex offender, and the mother had been assaulted by the father of R.G.'s brother while seven months pregnant. After approximately two years, the proceedings were closed with a bridge order placing the children in the mother's sole custody.

[4] The pleadings in the underlying CINA case concern all three children in the home, but the instant termination proceeding involves only R.G.

within reach of the children.  R.G. has not returned to parental custody since this time.

Following a permanency hearing held in December 2024, the court directed the State to file a termination of parental rights petition as to R.G.  By the termination hearing, R.G. had been the subject of three founded child abuse reports.  And since the most recent court involvement, the mother had nine positive drug tests for methamphetamine.  She denied using the drug but admitted abusing oxycodone.

R.G.'s biological father had "no showed" for over thirty drug tests, refused on several occasions, and tested positive for methamphetamine on October 1, 2024.  While at first he denied using methamphetamine, he later admitted to such use and admitted to attempting to tamper with results by soaking his head in bleach for an hour before the test.  He testified he last used methamphetamine two months before the March 2025 termination hearing.

At the time of the termination hearing, R.G.'s father resided in a trailer with his mother.  He reported that the home was not suitable for R.G. because the previous occupants had manufactured methamphetamine there, but that he could clean it up.  The department was allowed to observe the living room and kitchen. The kitchen was observed to have no visible space on the counter, sink, table, or stove.  The carpet and flooring needed to be replaced.  But most concerning, the father was not participating in drug testing, substance-use treatment, or mental-health therapy.  He was threatening toward service providers and department employees.  As described by the district court, his testimony at the termination

hearing was "defiant." To his credit, by the termination hearing, he was exercising fairly consistent supervised visits with R.G.

R.G.'s mother remained unemployed, was driving her boyfriend's vehicle, and was living with her sister. She was not addressing her substance-use issues or mental-health concerns and was exercising only inconsistent visitation.

While R.G. had initially been placed with a relative, she was moved to foster care after the relative placement allowed unsupervised visits with the father. R.G. is reported to be bright, social, and inquisitive. The foster home supports sibling visits between R.G. and her brothers and is willing to provide a permanent home for R.G. through adoption.

## II.     Standard of Review

"We review proceedings to terminate parental rights de novo." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *Id.*

## III.     Analysis

## A.     Statutory Ground

Our review follows a three-step process that involves determining whether a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

We turn first to the father's claim related to the statutory ground. The district court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2024), which permits termination upon clear and convincing

proof that (1) the child is three years of age or younger; (2) the child has been adjudicated a CINA; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent.

The father's petition on appeal only addresses the fourth element—whether R.G. could be safely returned to his custody at the time of the termination hearing. He does not contest that R.G. is three years of age or younger, has been adjudicated as a CINA, or that R.G. has been removed from the physical custody of her parents for at least six of the last twelve months without any trial home placements. Because the father is not addressing his substance-use issues, is not compliant with drug testing, and his home is not appropriate for R.G., we conclude clear and convincing evidence supports termination of the father's parental rights under Iowa Code section 232.116(1)(h).

## B. Best Interests

We next consider whether termination is in the child's best interests, which both parents contest. In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

As noted by the guardian ad litem at the time of the termination trial, the case "continues to be stuck in place" as R.G.'s parents have not taken the steps necessary to provide a long-term, stable home. Contrastingly, R.G.'s current placement has provided her with necessary safety, structure, and much needed permanency. And as previously noted, they are willing to permanently integrate R.G. into their family through adoption. *See* Iowa Code § 232.116(2)(b). The placement is also willing to maintain contact with R.G.'s siblings. Termination is in R.G.'s best interests.

**C.        Extension of Time for Reunification Efforts**

Both parents request a six-month extension for reunification efforts. A court may decline to terminate parental rights and instead provide the parent with a six-month extension. *See* § 232.104(2)(b). To do so, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.*

On this record, little suggests the need for removal from either parent will be resolved with an additional six months. Neither the mother nor the father have taken the steps to address the issues that brought R.G. to the court's attention. The father failed to participate in much of the requested drug testing. He tested positive for methamphetamine shortly before the termination trial and admitted to recent use. He has not engaged in additional recommended services.

As for the mother, she has been involved with the department or the court in some fashion just shy of ten years. She is unwilling or unable to implement the

skills needed to protect R.G. She has tested positive for methamphetamine and admits to abusing oxycodone.

Because the record does not support a determination that the need for R.G.'s removal will be resolved in six months, we, like the district court, decline to grant a six-month extension for reunification efforts to either parent.

**D.    Application of Permissive Exception**

Both parents claim the district court should have applied a permissive exception found in section 232.116(3). In particular, the parents claim their strong bonds with the child precludes termination. *See* Iowa Code § 232.116(3)(c).

We begin with the premise that the exceptions are permissive and not mandatory. *See id.* § 232.116(3). And for permissive exceptions, the parent claiming the exception has the burden to prove it should apply. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Further, the existence of a bond is not enough for the invocation of this exception. "The law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (citation omitted).

The district court determined that any bond between the mother and R.G. had been weakened by the mother's lack of consistency with visits. And between the father and the child, while the district court noted a bond had developed, it was not one so strong as to cause significant harm to R.G. if a termination occurred. On our review of the record, we conclude neither parent offered clear and convincing evidence that termination would be detrimental to R.G. We determine

the application of the highlighted permissive exception to be unwarranted as to either parent.

**E.      Reasonable-Efforts Finding**

The mother claims the department failed to make reasonable efforts to reunify the family.  The district court determined that reasonable efforts were provided to the mother.  The court highlighted services offered to the family including, but not limited to, case management services, foster family care, relative care, kinship navigator, visitation services, substance-abuse evaluation, substance-abuse treatment, drug testing services, mental-health evaluation, in-home family services, family preservation services, family focused meeting, Medicaid, protective childcare, and other community service referrals.

The mother asserts she was not provided reasonable efforts and highlights the lack of assistance with housing, gas vouchers, and a parent partner.  As to this argument, we determine that only the issue of reasonable efforts related to housing has been preserved, based on the mother's written motion filed in November 2024.

We note that,

> [w]hile the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility "to demand other, different, or additional services *prior* to the termination hearing." . . .  Complaints regarding services are properly raised "at removal, when the case permanency plan is entered, or at later review hearings."

*In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (quoting *In re M.Y.R.*, No. 11-1139, 2011 WL 5389436, at *7 (Iowa Ct. App. Nov. 9, 2011)).

Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."

*C.H.*, 652 N.W.2d at 148. While the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility "to demand other, different, or additional services *prior* to the termination hearing." *S.R.*, 600 N.W.2d at 65 (emphasis added); *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997). Complaints regarding services are properly raised "at the removal, when the case permanency plan is entered, or at later review hearings." *C.H.*, 652 N.W.2d at 148. Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.*

And the reasonable-efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the department to reunify parent and child after removal impacts the burden of proving those elements of termination that require reunification efforts. *See In re B.K.K.*, 500 N.W.2d 54, 57 (Iowa 1993); *In re L.H.*, 480 N.W.2d 43, 46 (Iowa 1992). The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to a parent. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The mother did not raise a challenge to the lack of reasonable efforts to the court concerning gas vouchers or a parent partner prior to the termination hearing. Indeed, the issue of a parent partner did not appear to be raised before the mother's appeal. We determine that the issue of reasonable efforts as it relates to gas vouchers or a parent partner is not preserved for our review.

The record reflects that the mother preserved the housing issue. But on our close review of the record, we conclude the department provided reasonable efforts to the mother. The department provided referrals to the shelter and

transitional housing, which utilizes Section 8.[5]  The mother's lack of housing appears to be based on the actions and inactions of the mother.  Service providers testified about their efforts on housing.  While the mother had Section 8 housing, such was lost after the raid on her home.  And transitional housing is unavailable unless the children are placed in the home at least fifty-one percent of the time.  The mother is not eligible to reapply for Section 8 housing until 2026, for matters of her own making.  While the department has an obligation to offer reasonable services, it is incumbent upon a parent to utilize them.  Given the scope of services provided to the mother, we affirm the district court's determination that reasonable efforts were provided to the mother.

## IV.    Conclusion

Clear and convincing evidence supports the statutory ground relied on by the district court for termination of the father's parental rights, termination of the parents' parental rights is in the child's best interest, and neither an extension of time nor application of a permissive exception was warranted for either parent.  And the department made reasonable efforts toward reunification with the mother.

**AFFIRMED ON BOTH APPEALS.**

---

[5] "Section 8" refers to a federal housing assistance program.  *See* 42 U.S.C. § 143f; *Horizon Homes of Davenport v. Nunn*, 684 N.W.2d 221, 222–23 (Iowa 2004) (describing the Section 8 housing program).