CHARLES R. SKEMP, d/b/a F. G. SKEMP & SON CONTRACTORS, plaintiff-appellee, v. MATTHEW B. OLANSKY, d/b/a OLANSKY CONSTRUCTION COMPANY OF DUBUQUE, defendant-appellee; ARTHUR TRAUSCH et al., defendants-appellants.

No. 49244.

(Reported in 85 N.W.2d 580)

OCTOBER 15, 1957.

Gilloon, Nelson & Gilloon, of Dubuque, for appellant Trausch.

Kenline, Roedell, Hoffmann & Reynolds, of Dubuque, for appellants Peter J. Seippel Lumber Company, William S. Sheppley and Geneva K. Sheppley.

Kintzinger & Kintzinger, of Dubuque, for plaintiff-appellee.

Matthew B. Olansky, pro se.

THOMPSON, J.—During the year 1954 the defendant Arthur Trausch was the owner and holder of record title to real estate described as Lot 1 of 13 and Lot 2 of 14 in Mississippi Heights Subdivision No. 2 in the City of Dubuque, Iowa. In April of that year the defendant Olansky was engaged in building a dwelling house upon these lots. He engaged the plaintiff to do certain masonry and brick work. A large part of this work was done, beginning on May 13 and ending on July 29 of 1954. The reasonable value of the work done by plaintiff was not in dispute.

During the year 1954 Olansky became financially involved and in the latter part of the year all work on the house was stopped. The defendant Peter J. Seippel Lumber Company, a corporation (hereinafter referred to as the Company), furnished

a considerable quantity of building material for the house, of the value of $5129.40. In November 1954 the company filed a mechanic's lien against the property for that amount. A lien was also filed by Curtis-Straub Company in the sum of $604.68. No other liens were filed except for that of the plaintiff, which was filed on June 13, 1955. In the meantime, on May 8, 1955, Trausch deeded the property to the company, the consideration being satisfaction of its mechanic's lien, payment of the then existing Curtis-Straub lien, satisfaction of an account in the amount of $3032.12 owing to the company by Trausch and Olansky growing out of a partnership venture in which they had engaged in building certain apartment houses, and a cash payment by the company to Trausch of $900. The total consideration was thus $9666.20. At the time the house was partly completed, and work had been stopped for several months.

The deed from Trausch to the company was recorded on May 19, 1955. On June 21, 1955, the company sold and conveyed the property to the defendants Sheppleys, who completed the house and so far as the record shows still hold legal title.

On June 7, 1955, the plaintiff went to the house and with a helper did one hour's work. He then, on June 13, filed his claim for a subcontractor's lien in the sum of $1366.53, and on the same date gave the statutory notice of filing to Olansky, Trausch and the company.

I. It is the primary claim of the plaintiff and of Olansky that Olansky, Trausch and the company were engaged in a joint venture in building the house. The district court, after a full trial of the issues, found there was no joint venture, and that plaintiff was not entitled to foreclose his mechanic's lien. But it confounded an already somewhat confused situation by finding that the value of the house and lot, apparently after the house was completed, was $22,500; that from this there should be deducted the amount of the company's lien in the sum of $5129.40 and the value of lots, owned by Trausch, which it fixed at $3500; and the balance, or $13,870.60, was adjudged to be a constructive trust, to be held by Trausch, his wife, Lillian Trausch (who was at no time a party to the suit), and the company, as trustees. The beneficiaries of the trust were listed as the plaintiff in the amount of his claim, $1366.53; the defendant Olansky,

who had in his cross-petition claimed $1125 for anticipated profit from the sale of the home, but which the court said was for "services on said home" as a general contractor; and some thirteen other supposed suppliers of material and labor, "as listed in Exhibit 'A' attached to the (Olansky's) cross-petition." The trustees so created, Arthur and Lillian Trausch and the company were ordered and directed to pay from the trust fund the claims of the thirteen parties whose names were included in Exhibit A, "upon being satisfied that the claimants furnished the services and materials claimed upon and that they thus have an interest in the trust", in addition of course to paying the sums awarded to the plaintiff and Olansky.

It seems to have been the thought of the court that in some manner Trausch and the company had unjustly enriched themselves at the expense of those named as the beneficiaries of the trust. It is true Olansky testified these persons and firms had not been paid. None of them had filed claims for liens, or asserted their claims in any way. The only supplier other than the plaintiff and the company who had filed a claim for a lien, the Curtis-Straub Company, was paid, as noted above. The others slept on their rights; so far as the record shows, they had abandoned any claims. The order of the trial court was for them a "windfall", something bestowed upon them by a bountiful Providence without request or even knowledge on their part. Somewhat less agreeable, however, must be the position of Lillian Trausch, who, although not named as a party by any of the pleadings in the case, who was served with no notice of the proceedings or of any claims against her, finds herself a trustee of a constructive trust and liable, with Arthur Trausch and the company, to pay over to the plaintiff, the defendant Olansky, and some thirteen other potential claimants the sum of $13,870.60. We fear the court, in its zeal to administer what appeared to it to be equity, overlooked some fundamental principles of law and procedure.

II.   The finding of a constructive trust was not in response to any issue raised by the pleadings or suggested in the trial of the case. We are satisfied from the record that it burst upon the litigants as a judicial bomb unheralded and unexpected.

It is the contention of the plaintiff that the prayer for general equity contained in his foreclosure petition and in

the cross-petition of Olansky were sufficient to support a finding of constructive trust. It is true that even though the special relief prayed for in an action in equity is not supported by the evidence, a request for general equitable relief may often justify the court in awarding other relief, and that such a request is generally to be granted liberally. But the rule is not without limitations. 19 Am. Jur., Equity, section 227, pages 181, 182; 30 C. J. S., Equity, section 607, pages 1003, 1004; Paintin v. Paintin, 241 Iowa 411, 413–415, 41 N.W.2d 27, 16 A. L. R.2d 659, and cases cited. The relief granted under the general prayer must be consistent with the case made by the pleadings and must be such as will not surprise the defendant. He must have an opportunity to defend against whatever relief may be granted against him; it will not be granted if there is nothing in the prayer of the bill or in the facts asserted in the pleadings which fairly apprizes him that such relief is asked or may be granted against him. Fairness in the trial of the case demands that much.

In the instant case there was nothing in the plaintiff's petition or the cross-petition of Olansky which in any way advised either Trausch or the company that reliance was had upon the theory of a constructive trust. Both parties, in asking relief against these defendants, planted themselves upon the claim of a joint venture; with the additional claim of the plaintiff that he was entitled to a foreclosure of his mechanic's lien. In fact, it is fair to say that the record discloses no point at which any party, either by pleading or by evidence or argument in the trial, made any claim that a constructive trust was shown or that relief should be awarded upon that theory. The trial court, in basing its order upon that ground, was far outside anything permitted either by the special prayers or the prayer for general equitable relief. The order amounted to a judicial ambush of the defendants and cannot be upheld.

In fact, there is no basis for the finding in the evidence, even if the pleadings had made it available. The most that is shown is that the plaintiff and certain other suppliers of material or labor failed to file their mechanic's liens in time; except for the plaintiff and Olansky the other beneficiaries have never filed any claims, by mechanic's liens or otherwise. That someone, per-

haps the company, perhaps the Sheppleys, may have profited by this failure shows nothing unfair or improper. The law gives such suppliers their remedy if they will use it, and it is an adequate one. We do not say that a profit was made by anyone; the value of the incompleted house is not shown in the record. But in any event the point is immaterial. Our mechanic's lien statutes would be of small utility or purpose if the contractor or subcontractor who fails to file in the time prescribed or otherwise neglects to comply with them may be shielded by the establishment of a constructive trust to protect him against his negligence. Real-estate titles would be clouded for long and indefinite periods. The supplier of labor or materials for improvements upon real estate is given by the mechanic's lien laws a special remedy the like of which is not available to the butcher, the baker, the candlestick maker, the grocer, the physician, or many other creditors. It is not asking too much to require him to comply with the statutes in asserting his claim. There is a considerable amount of evidence from the plaintiff and other witnesses that many of the potential claimants, including the plaintiff, did not file promptly because Olansky asked them not to do so until the house was completed, when it would be sold and they would be paid. They relied on this, to their cost.

III. The real fighting point in the case was the claim of joint venture pleaded by the plaintiff and supported by Olansky. The trial court held, correctly we think, that the weight of the evidence fails to support this contention. The great part of the evidence in the case was directed to this point. Olansky testifies to such an agreement among himself, Trausch, the owner of the real estate, and the company, the supplier of a large quantity of lumber. It would serve no purpose or benefit to the profession to detail the testimony bearing on the point. Olansky's testimony is considerably weakened by the fact he first pleaded in his cross-petition that the agreement—admittedly oral—was that upon sale of the house Trausch would receive $3500, the price he asked for his lots; the company would receive payment for material furnished less 10% contractor's discount; and the remainder would go to Olansky. This hardly shows an agreement to share profits and losses; and perhaps in recognition of this, Olansky mended his hold at the time of the trial to allege

8

that he was to receive first from the profits an amount equal to 5% of the selling price of the property, and the remainder, if any, of the sale price above the amounts set forth above was to be divided equally between Trausch, the company and Olansky. This made quite a different agreement from the one he first pleaded, and throws doubt upon his entire story.

Much reliance is placed by the plaintiff upon the fact that Peter J. Seippel, the president of the company, made considerable efforts to help Olansky to get a loan to aid him in building the house. Mr. Seippel accompanied Olansky on various trips to Cedar Rapids and Des Moines and once to Lincoln, Nebraska, for this purpose; and the company's office force prepared applications for the loans. Mr. Seippel explains this by saying that the lumber business is highly competitive, and they furnish various services to prospective builders as a means of promoting good will and so of selling supplies. We see nothing inherently improbable in this. On the whole, we agree with the trial court that the evidence fails to show a joint venture.

■■ IV. We also uphold the trial court in denying the foreclosure of plaintiff's mechanic's lien. It will be noted that the final item furnished by the plaintiff was on July 29, 1954, except that on June 7, 1955, he went to the incompleted house, with a helper, and did one hour's work. This was after all work had long been stopped, and some weeks after the conveyance of the property by Trausch to the company, on May 9, 1955, and the recording of the deed on May 19 following. The impression is strong that the small amount of work on June 7, 1955, was for the purpose of extending the time for filing the lien. It is true that the work which he had been employed to do had not been completed; but nothing had been done on the house for several months, and in the meantime there had been a change of ownership. The connection of Olansky—designated in plaintiff's claim for mechanic's lien as the general contractor and with whom plaintiff's contract was made—with the project had been terminated. See Nielson v. Buser, 207 Iowa 288, 292, 222 N.W. 856; Denniston & Partridge Co. v. Luther, 194 Iowa 464, 469, 188 N.W. 664, 666 ("There is a large measure of equity in the rule which requires the claimant of a lien to act promptly in

filing his statement, and refuses, except in a clear case, to permit him to prolong the time therefor, by making a trifling or delayed item of charge in his account.") ; Canfield Lumber Co. v. Heinbaugh, 184 Iowa 149, 154, 168 N.W. 778.

It is contended by the plaintiff that the unfinished state of the house and that he had not completed the work which he had contracted to do justified the small item of June 7. But we have pointed out above that all work had stopped several months before, and the title to the property had been transferred. It was more than ten months since the plaintiff had performed any services on the house, and his principal contractor, Olansky, was clearly eliminated from any connection with the project. In connection with the lapse of time between the date of the next to the last item of plaintiff's account, July 29, 1954, and the final one of June 7, 1955, see Denniston & Partridge Co. v. Luther, supra, Chase v. Garver Coal & Mining Co., 90 Iowa 25, 57 N.W. 648, and Gilbert v. Tharp, 72 Iowa 714, 32 N.W. 24.

The plaintiff further contends that Trausch made his property liable for mechanics' liens by making an arrangement with Olansky which required the latter to improve it by building a house. If the vendor or lessor has by a contract express or implied required his vendee or lessee to improve the real estate sold or leased, he is held thereby to have subjected his interest in the realty to claims for mechanics' liens for labor and material. On the other hand, mere knowledge of or consent of the vendor or lessor to the making of improvements by his vendee or lessee does not ordinarily subject the realty so improved to mechanic's lien claims. The question is discussed and authorities cited in Denniston & Partridge Co. v. Romp, 244 Iowa 204, 208–212 inc., 56 N.W.2d 601. We shall not attempt to analyze the application of the rule to the situation in the case at bar, because the property had been conveyed from Trausch, the record titleholder when the work was done, to the company before plaintiff's lien claim was filed. Since we have held that plaintiff's lien claim was not timely filed, and that there was no joint venture, the lien can have no effect as against a purchaser who took title before the belated claim was filed.

V. It follows from the foregoing that the trial court was in error in establishing a constructive trust. There was of course

no basis for any finding against Lillian Trausch, and the defendants Sheppleys are certainly entitled to a dismissal of the case as against them. Their title to the property is good as against any contention urged in this cause. The case was fully tried and the court's order, while not in the form of a final judgment because the matter was held open because of the constructive trust finding, was otherwise intended to be final and conclusive as to the rights of the plaintiff, the defendant and cross-petitioner Olansky, and the defendants Trausch and the Peter J. Seippel Lumber Company. We accordingly remand the case, with these directions: 1. The plaintiff is entitled to a personal judgment against Olansky for the amount of his claim, with interest; 2, the plaintiff's petition and the defendant Olansky's cross-petition are to be dismissed with prejudice as against the defendants Arthur Trausch, Peter J. Seippel Lumber Company, William S. Sheppley and Geneva K. Sheppley; 3, since Lillian Trausch, named as a trustee in the court's holding of a constructive trust, and the suppliers who did not file liens but were made beneficiaries of the trust, were not parties to the case, and our holding that the order creating the trust was beyond the powers of the court eliminates this feature of the litigation, no reference should be made to them in the final decree. Decree will be entered in conformity to these directions.

Reversed and remanded, with directions.

HAYS, C. J., and BLISS, GARFIELD, LARSON, OLIVER, PETERSON, and WENNERSTRUM, JJ., concur.