**Steven SHEEDER and Janet Sheeder, Appellants,**

v.

**Carl H. LEMKE and Shirley C. Lemke, Appellees.**

No. 95–2137.

Supreme Court of Iowa.

May 21, 1997.

A. Eric Neu of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellants.

David S. Bruner of Bruner & Bruner, Carroll, for appellees.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

Steven and Janet Sheeder, vendees under a contract of sale involving 160 acres of land, appeal from a decree upholding the forfeiture of their interest by the vendors, Carl and Shirley Lemke. After considering the arguments of counsel and reviewing the record de novo in this equity action, we conclude that the district court's decree should be reversed

and the forfeiture nullified subject to conditions that we impose.

### I. *Factual Background.*

This cause was tried in equity. We make the following findings of fact after our de novo review of the record. Iowa R.App. P. 4; *Goodale v. Bray,* 546 N.W.2d 212, 214 (Iowa 1996).

In March 1992 the Sheeders purchased 160 acres in Guthrie County on contract from the Lemkes. The contract price was $143,000. No down payment was required. The Sheeders were given possession on April 1, 1992. Each March, beginning in 1993, they were to make payments of $5720 toward the principal owed, plus accrued interest. The Sheeders have made all payments in a timely fashion, except for a brief, partial delinquency of $2000 in 1994 that has since been cured. There remains unpaid principal on the contract price of roughly $126,000, plus accrued interest. Credible evidence indicates that the property was worth at least $170,000 at the time of the purported forfeiture.

When the Sheeders acquired the property, it was necessary to make substantial improvements to the dwelling house located there. The garage, corncrib, Harvestore silo, hog house, and two barns located on the property were also in fairly poor repair at the time the Sheeders purchased the property. The Sheeders replaced several broken and missing windows, recarpeted, refinished the house's woodwork, replaced rotten drywall, and repaired a leaky roof. They installed a water heater and a water softener (the house had neither when the Sheeders purchased it). They replaced an old coal-burning furnace and a septic tank. They converted the upstairs to a "dormer" for their children. The Sheeders also made some improvements to the land and buildings. They terraced, replaced tile, and began to replace a fence.

The contract between the Sheeders and the Lemkes contained the following paragraph authorizing forfeitures:

15.1. **Forfeiture.** If buyers (A) fail to make the payments aforesaid, or any part thereof, as same become due; or (B) fail to pay the taxes ... levied upon said property, or assessed against it, by any taxing body before any of such items become delinquent; or (C) fail to keep the property insured; or (D) fail to keep it in reasonable repair as herein required; or (E) fail to perform any of the agreements as herein made or required; then sellers, in addition to any and all other legal and equitable remedies which they may have, at their option, may proceed to forfeit and cancel this contract as provided by law (chapter 656, Code of Iowa). . . .

Relying on this clause, the Lemkes, after obtaining a mediation release, served a notice of forfeiture in May 1995 giving the Sheeders thirty days to cure seven alleged breaches. These were:

| | | |
|---|---|---:|
| (a) | Failure to pay real estate taxes for fiscal year 1993–94 | $ 1,181.00 |
| (b) | Destroyed or removed fence | 1,175.38 |
| (c) | Mechanic's lien filed 10–8–93 | 10,996.78 |
| (d) | Mechanic's lien filed 12–10–93 | 10,275.00 |
| (e) | Failure to keep in force insurance against fire on corncrib and barn (burned down) | 25,000.00 |
| (f) | Made material alteration to property without consent of Sellers (plowed pastureland) | 2,800.00 |
| (g) | Mechanic's lien filed 3–24–95 | 1,580.00 |
| | Total | $53,008.16 |

During the thirty-day cure period provided in the notice, the Sheeders paid the real estate taxes and secured the release of the December 1993 mechanic's lien. The October 1993 mechanic's lien was not released before the time to cure had expired. That lien had been released before trial of this action commenced in November 1995. The 1995 mechanic's lien still had not been released when the trial commenced. No action had been taken with respect to the alleged failure to insure a barn, the alleged removal of a fence, or the plowing under of pastureland.

The district court found that the defaults shown to exist were sufficient to sustain the forfeiture under Iowa Code section 656.2 (1995). Other facts material to the decision of this appeal will be discussed in connection with our consideration of the legal issues presented.

## II. *The Law Governing Forfeiture of Real Estate Contracts.*

Forfeiture is a harsh remedy and is not favored in either law or equity. *Lett v. Grummer*, 300 N.W.2d 147, 149 (Iowa 1981); *Babb's, Inc. v. Babb*, 169 N.W.2d 211, 212 (Iowa 1969); *Kilpatrick v. Smith*, 236 Iowa 584, 593, 19 N.W.2d 699, 703 (1945). One may make a contract that provides for forfeiture following a breach; however, courts of this state will "scan [a contractual forfeiture provision] closely" before giving it effect. *Van Hosen v. Bankers Trust Co.*, 200 N.W.2d 504, 507–08 (Iowa 1972) (forfeiture clause in employee pension plan); *LaFontaine v. Developers & Builders, Inc.*, 261 Iowa 1177, 1189–90, 156 N.W.2d 651, 659–60 (1968) (same in stock purchase agreement). The party claiming forfeiture of a real estate contract has the burden of proving facts that, based on terms of the contract, would entitle the vendor to forfeit the agreement. *Tait v. Reid*, 158 Iowa 466, 472, 139 N.W. 1101, 1103 (1913). Forfeitures will be enforced only "when those claiming them ... show that the equities are clearly on their side." *Kilpatrick*, 236 Iowa at 593, 19 N.W.2d at 703.

When assessing the propriety of a claimed forfeiture, we are mindful of the legal relationship between vendor and purchaser. After a real estate contract is made, the purchaser becomes the equitable owner of the land. The vendor retains legal title to the land as "security for payment of the purchase price." *Knapp v. Baldwin*, 213 Iowa 24, 27, 238 N.W. 542, 544 (1931). For this reason, we are less likely to approve a forfeiture if the purchaser is current with payments. *Cf. Lett*, 300 N.W.2d at 149. Regarding breaches other than failure to make payments, we have held that de minimis breaches not affecting the vendor's security will not justify forfeiting a real estate contract. *Id.* (six missing ten-by-twelve pens in an obsolete hog house insufficient to support a forfeiture). On the other hand, "flagrant" and "stubbornly deliberate" breaches, even if minor when viewed from an economic standpoint, have been held to justify a forfeiture. *Miller v. American Wonderlands, Inc.*, 275 N.W.2d 399, 403 (Iowa 1979).

## III. *Disposition.*

In considering the legitimacy of the Lemke's efforts to forfeit the contract, we deem it significant that $25,000 of the $53,000 monetary value attributed to the alleged breaches is ascribed to a failure to insure a corncrib and barn. The record reflects that this omission was unintentional on the Sheeders' part and occurred because of a difference of opinion over what their policy covered. The Sheeders had insured the barn and corncrib under a policy with State Farm Mutual Insurance Company. Later, they changed insurance companies and believed their policy with the new insurer included the barn and corncrib. After a fire occurred, the second insurer denied coverage. This dispute was in litigation at the time the present action was tried.

The record reflects that the barn was in very poor condition at the time the Sheeders purchased the property. The corncrib was rat-infested and had not been used for several years. A valuation expert testified for the Sheeders that the loss of these items did not impact negatively on the value of the farm. The Lemkes' valuation witness estimated that, at most, loss of the barn entailed a $500 loss of value to the farm as a whole. We find that the inclusion of this alleged breach and the demand of $25,000 to cure it was unreasonable. This circumstance alone requires that a court of equity grant relief from the forfeiture initiated by the Lemkes' notice. The Sheeders were in no position to predict which items in the notice would be sustained by a court and which items would be rejected. The unreasonableness of the total demand thus frustrated their efforts to pay its various components.

Other items of default listed in the notice of forfeiture also require discussion. The allegation of destroying or removing a fence relates to the Sheeders' removal of an existing fence that was in poor condition. Steven Sheeder testified that this fence had holes in it and had trees growing up in it and that it would not contain cows. This testimony was corroborated by another witness. The Sheeders were in the process of replacing the removed fence at the time the notice was served, but the job was only partially com-

pleted. We feel that the Lemkes' demand that this be completed within thirty days was unreasonable.

The claimed default based on material alteration of the property was directed at the Sheeders' conversion of thirty acres of pastureland to cropland. This was done to produce more income for the Sheeders. Two valuation witnesses called by the Sheeders testified that this action increased the value of the farm rather than decreasing it. In the absence of some specific restriction in the agreement that prohibited the conversion of pastureland to cropland, we are unable to conclude that this action constituted a breach of the contract of sale upon which a forfeiture can be predicated.

■ Two of the three mechanic's liens on the property were not released within the thirty-day cure period. It appears, however, that at least one of these liens involved a claim by a materialman that was not contemplated by the Sheeders. The placing of a mechanic's lien on a vendee's interest may be a matter that is beyond the vendee's control. A vendee in this position should not be forced to pay a disputed claim within a fixed period unless the vendor's security is materially impaired. In order for a vendor's interest to be subject to a mechanic's lien for improvements ordered by the vendee, the vendor must have had some active involvement in the ordering of the work. *Skemp v. Olansky,* 249 Iowa 1, 3, 85 N.W.2d 580, 585 (1957); *Denniston & Partridge Co. v. Romp,* 244 Iowa 204, 208–12, 56 N.W.2d 601, 603–04 (1953). Mere knowledge that the work is being performed does not suffice to defeat the vendor's superior position. *Skemp,* 249 Iowa at 3, 85 N.W.2d at 585. There is nothing in the present record to suggest that any of the mechanic's liens listed in the notice of forfeiture were senior to the Lemkes' security interest under the contract.

Although we conclude that for the reasons discussed the Sheeders should be granted equitable relief against the forfeiture of their interest under the agreement with the Lemkes, we believe that the passage of time requires some conditioning of the relief to be granted. The potential adverse consequences of the Lemkes' forfeiture effort has likely dissuaded the Sheeders from continuing payments of principal and interest during the pendency of this litigation. Consequently, as a condition for relief from the forfeiture, the Sheeders shall within sixty days of the issuance of procedendo make all payments of interest and principal due to the Lemkes under the agreement to the date that such payment is tendered. In addition, it shall be made to appear during this same period of time that the Sheeders have paid all real estate taxes that are currently due on the property or, if the Lemkes have paid any of such taxes during the pendency of this litigation, that the Sheeders have reimbursed the Lemkes in full for such payments. At the conclusion of the sixty-day period following the issuance of our procedendo, either party may request that the district court enter such decree as is necessary to settle the title of the property in a manner consistent with our opinion.

**REVERSED.**