OPINION OF THE COURT
Ellen Gesmer, J.
*615 This case presents two perplexing questions. Can a low-income cooperative corporation be held liable to a shareholder for billing, and then suing the shareholder for sums to which the corporation is not entitled, where the shareholder then pays the amounts to which the corporation was not entitled? For the reasons set forth below, the court finds that plaintiff has proven a claim against the corporation for fraud, and that the corporation is liable to him for the improperly billed sums for which he paid. However, the court further finds that plaintiff may not recover for emotional injuries under these facts. Consequently, the court awards Mr. Brown the sum of $793.
Findings of Fact
In December 1999, claimant Martinmo Brown purchased the shares and signed the proprietary lease for the cooperative apartment located at 2149 Pacific St., Apt. A2. Defendant NY Residential Works, Inc. is the managing agent for 2149-53 Pacific Street HDFC, the low-income cooperative corporation which issued the shares to claimant. Mr. Brown’s monthly rent for the apartment was $358 from the time he moved in until July 2002, when it was increased to $402.
Under paragraph 1.01 (a) of the lease, Mr. Brown is required to pay his maintenance by the first day of each month. Under paragraph 5.02 (a) of the lease, a shareholder who does not pay any installment of maintenance “promptly” shall pay, as additional maintenance “interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof.” In addition, the lease also provides, at paragraph 6.01 (c):
“If the Shareholder shall at any time be in default under this lease and the Corporation shall incur any expense (whether paid or not) ... in beginning any lawsuit or proceeding based on such default, or defending or asserting a counterclaim in any action or proceeding brought by the Shareholder, said expense including reasonable attorneys’ fees and disbursements, shall be paid by the Shareholder to the Corporation, on demand, as additional maintenance charges.”
The lease also provides, at paragraph 5.01 (a), that the shareholder shall have the right to “quietly have, hold and enjoy the apartment without any suit, trouble or hindrance from the Corporation” upon paying the maintenance charge and performing the covenants and complying with the condition of the lease.
*616 From time to time, Mr. Brown did not pay his maintenance on the first of the month. Whenever Mr. Brown failed to pay his maintenance by the twelfth of the month, his bill for the following month included a “late fee” of $15. The bills were prepared by defendant.
In August 2000, defendant served Mr. Brown with a petition and notice of petition notifying him that it was suing him for alleged arrears in rent of $1,507. According to the attached breakdown, this sum included “late fees” of $75. On or about December 1, 2000, the parties entered into a stipulation (Stip 1) in which Mr. Brown agreed to the entry of a final judgment against him in the amount of $2,521, which he was to pay off in installments. The books and records of the corporation as of December 1 showed that Mr. Brown owed a total of $2,999, including $135 in late fees. Consequently, the judgment amount of $2,521 reflected a credit for the late fees, as well as a credit for an additional $343. This reflected a credit to Mr. Brown for a period of time in February 1999 when he was billed for rent but was not yet able to move into the apartment.
Despite Stip 1, defendant did not credit Mr. Brown on its books and records with the credit of $343 or the credit of $135 for the late fees. In addition, although the parties had agreed that the schedule for the payment of rent in Stip 1 included December’s rent, defendant charged Mr. Brown with a late fee of $15 in December 2000.
In October 2002, defendant sued Mr. Brown for nonpayment of rent, claiming that he owed $1,544 in rent arrears and attaching a breakdown of his alleged arrears in rent. The breakdown showed that Mr. Brown was being billed for “late fees” of $45 and a fee of $50 for “dft. and serve rent demand.” The breakdown also showed that Mr. Brown owed a balance of $1,341 as of July 1, 2002. Upon examination of Mr. Brown’s entire rent history, which was submitted into evidence, the balance of $1,341 shown on the breakdown included the $343 waived in the first judgment; the $135 in “late fees” accumulated before the first judgment; 18 additional charges for “late fees” totaling $270; a charge of $160 for “draft and file affidavit of default” and an additional charge of $50 for serving a rent demand in July 2002. Consequently, at that time, Mr. Brown was in arrears of only $491 with regard to rent at the time of the rent demand, and the remainder of the amount sought, $1,053, was for “late fees” and various legal charges. On or about November 13, 2002, Mr. Brown paid $1,544 to de *617 fendant. On December 31, 2002, the parties entered into a stipulation of settlement (Stip 2) agreeing to enter a judgment of $804, representing all rent through December 31, 2002, which was to be paid in two installments in January and February 2003.
Stip 2 further provided that there was a dispute over $160 which defendant agreed to waive if the $160 was a charge for legal fees. The rent history shows that defendant had charged Mr. Brown for legal fees of $160 on November 17, 2002, so, pursuant to Stip 2, this amount should have been credited to Mr. Brown’s account. Similarly, the rent history shows that Mr. Brown was billed for three “late fees” totaling $45 during the pendency of the summary proceeding. Since Stip 2 represented all amounts due through December 31, 2002, it was clearly the parties’ intent that these fees be waived. However, the rent history shows that Mr. Brown was not credited with either those late fees or the $160 in legal fees.
In October 2003, defendant sued Mr. Brown for nonpayment of rent, claiming that he was in arrears, through October 1, 2003, in the amount of $2,564. According to the breakdown attached to the 30-day notice, that included $322 for alleged late fees, including the three legal fees totaling $45 which defendant agreed to waive in Stip 2; $820 for various alleged legal fees, spanning the period from June 2001 through February 2003, including the $160 defendant had agreed to waive in Stip 2; and $324 for emergency locksmith repairs.
On November 26, 2003, the parties entered into a stipulation (Stip 3) agreeing that Mr. Brown owed $2,010 “representing all rent through November 30, 2003.” By that time, defendant had billed Mr. Brown for an additional two late fees, plus $50 for a rent demand, so that Mr. Brown’s rent ledger showed him owing a total of $3,046. Given the discrepancy between the rent ledger and the amount agreed on in Stip 3, the court finds that, in executing Stip 3, defendant was waiving amounts listed on Mr. Brown’s rent history totaling $1,036 and still asserting claims, based on the rent history, for miscellaneous expenses of $108. However, Mr. Brown was never given a credit in that amount on his rent bill. Moreover, Stip 3 provided that Mr. Brown was to pay off the arrears by paying his rent of $402 plus an additional $402 per month toward the arrears by the 15th of each month. Although Mr. Brown complied with this in December 2003 and in January, February and March, 2004, defendant continued to bill him for “late fees” each month, and *618 billed him, in addition, $615 in legal fees arising out of the last summary proceeding. Consequently, as of March 2004, Mr. Brown’s bills should have shown that he owed arrears of only $402. Instead, his bills showed arrears of $2,253. Although he did not pay April’s rent and arrears on time, by mid-May he had caught up, and his account should have showed a zero balance. Instead, it showed a balance of $1,866.
In July 2004, defendant billed Mr. Brown for $500 for a court appearance in this proceeding.
Mr. Brown was very upset by the continually ballooning balances. As the single father of several children, he takes very seriously his responsibility to maintain a home for his children. He was constantly distraught by the repeated late charges, the ever increasing legal charges, and his inability to ever catch up. Analysis
To prove an action for fraud, plaintiff must show “a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce him to act upon it, causing injury.” (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119 [1969]; 60A NY Jur 2d, Fraud and Deceit § 14.) The requirement that the defendant knew the representation to be false may be met by showing that the defendant should have known it to be false (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d at 120).
When defendant made the demand for rent in the second nonpayment proceeding, I find that it made a representation to Mr. Brown concerning the amount that he owed which was intended to induce him to pay that sum of money. I further find that he acted in reliance on that demand, and paid $1,544, the amount demanded. I further find that demand for rent included a statement that Mr. Brown owed $450 for “late fees” and $343 representing the amount waived by defendant in Stip 1. The statement that Mr. Brown owed $450 for late fees was false, since there is no clause in the lease which permits defendant to charge late fees to Mr. Brown. In addition, the statement that Mr. Brown owed defendant $343 is false because defendant’s acknowledgment in Stip 1 that Mr. Brown owed $2,521 through December 31, 2000, constituted a waiver of any other sums due through that date.
In addition, as the drafter of the lease, defendant can be presumed to know its contents. Consequently, the court finds that it should have known that it had no right to collect “late *619 fees” of $15 whenever a tenant was in arrears.* Moreover, the court finds that the defendant should have known that it had no right to collect an amount which it had previously waived. Accordingly, the court holds that defendant’s statements in its October 2002 demand for rent constituted a false statement that Mr. Brown owed $793 which he did not owe; that it made that statement to induce him to pay that amount; and that, in reliance on that false statement, he paid defendant that amount.
The October 2002 rent demand also included a demand for two payments of $50 each for drafting rent demands in May and September 2002, as well as a charge of $160 for filing an affidavit of default in June 2001. Presumably, defendant charged Mr. Brown for those amounts under paragraph 6.01 (c) of the lease as expenses incurred in a lawsuit as a result of Mr. Brown’s default in the payment of rent. I make no finding as to whether defendant was lawfully permitted to charge Mr. Brown those amounts; however, I find that plaintiff did not meet its burden of showing that defendant was not permitted to charge those amounts, and therefore, I find that plaintiff has not shown that the demand for rent for those amounts constituted a false statement.
I further find that the corporation has made additional false statements to Mr. Brown when it has continued to bill him for late fees, and for other amounts which it had previously waived its entitlement to collect. However, I find that Mr. Brown did not suffer any pecuniary loss as a result of those false statements, since the rent history shows that he had not paid any “late fees” except in November 2002. Mr. Brown did testify as to emotional injury from the false representations, but damages for emotional distress are not recoverable in fraud actions. (O’Neill v O’Neill, 264 AD2d 766 [2d Dept 1999]; Helbig v City of New York, 212 AD2d 506, 508 [2d Dept 1995]; Rivera v Wyckoff Hgts. Hosp., 184 AD2d 558, 561 [2d Dept 1992]; Jeffrey BB. v Cardinal McCloskey School & Home for Children, 257 AD2d 21, 24 [3d Dept 1999].) Consequently, Mr. Brown has only proven his claim for fraud as to the statements in the October 2002 demand for rent.
In arguing his case, Mr. Brown also argued that defendant should have to pay damages so that it would reform its prac *620 tices. Essentially, he was arguing that defendant should have to pay punitive damages. It is well settled in New York that punitive damages are not available in the ordinary fraud and deceit case (Kelly v Defoe Corp., 223 AD2d 529 [2d Dept 1996], citing Walker v Sheldon, 10 NY2d 401, 405 [1961]). They are however recoverable where the public interest is at stake and where the plaintiff pleads and proves that defendant “(1) acted maliciously, wantonly or with recklessness that betokens improper motive or vindictiveness; (2) has engaged in outrageous or oppressive intentional misconduct; or (3) has acted with recklessness or wanton disregard of safety or rights . . . (Borkowski v Borkowski, 39 NY2d 982, 983 [2d Dept 1976])” (China Trust Bank of N.Y. v Standard Chartered Bank, PLC, 981 F Supp 282 [SD NY 1977]). Consequently, while punitive damages may not properly be recovered in this action, it might well be that a claim would lie if defendant continues to charge its low-income tenants for sums which it is not authorized to collect.
Accordingly, the court awards a judgment to Mr. Brown of $793, with interest from November 13, 2002, and costs and disbursements.

 Defendant did have the right under paragraph 5.02 (a) of the lease to collect interest on the amount due, but it chose not to do so. Consequently, the court will not speculate as to the amount that it would have been authorized to collect as interest.