**SELDIN COMPANY, d/b/a Featherstone Apartments, Plaintiff–Appellee,**

v.

**Amberleah CALABRO, Defendant– Appellant.**

No. 03–1252.

Court of Appeals of Iowa.

March 31, 2005.

Publication Ordered June 29, 2005.

Michael J. Tulis of Iowa Legal Aid, Council Bluffs, for appellant.

Craig M. Dreismeier of Reilly, Petersen, Hannan & Dreismeier, P.L.C., Council Bluffs, for appellee.

Considered by HUITINK, P.J., and MILLER and EISENHAUER, JJ.

EISENHAUER, J.

Amberleah Calabro rented an apartment from Seldin Co., d/b/a Featherstone Apart-

ments (Featherstone), an apartment complex receiving Section 8 assistance from the United States Department of Housing and Urban Development (HUD). In May 2003, Featherstone gave Ms. Calabro a notice to pay unpaid rent, *see* Iowa Code § 562A.27(2) (2003), alleging she owed part of April rent, May rent, and additional charges, including a late fee. After the expiration of the notice period, Featherstone filed a small claims action for forcible entry and detainer. *Id.* § 648.1(5). The small claims court granted the requested relief and awarded attorney fees to Featherstone, and Ms. Calabro appealed to district court. *Id.* § 631.13(1). The district court affirmed the small claims decision.

The supreme court granted Ms. Calabro's application for discretionary review, and transferred this case to us for disposition. Our review is de novo. *Id.* § 648.5 (stating forcible entry actions are tried in equity); *Horizon Homes of Davenport v. Nunn*, 684 N.W.2d 221, 224 (Iowa 2004).

**I. Late Fees**. Ms. Calabro raises several arguments centering on Featherstone's inclusion of late fees in its notice to pay unpaid rent. We now consider these arguments, which are the core of Ms. Calabro's appeal.

We find the following facts. Ms. Calabro and Featherstone signed a lease in January 2002. The lease stated rent was due on the first day of each month and provided for a late fee of $25.00, if rent is not paid on the sixth day of each month. The lease provides Ms. Calabro may not be evicted for unpaid late fees. At all times material to this action, Ms. Calabro's monthly rent was $68.00, with an additional $37.00 washer/dryer rental fee, for a total monthly payment of $105.00. Ms.

Calabro was to pay rent by mailing it to Featherstone's bank in envelopes provided by Featherstone. The bank would let Featherstone know when Ms. Calabro's rent was received.

Ms. Calabro purchased a money order for $105.00 on March 3, 2003, and mailed it to Featherstone's bank. It was not credited to her account until March 11, by which time a $25.00 late fee had been assessed. On April 4, 2003, Ms. Calabro purchased and mailed a money order for $105.00 to the landlord's bank, which was not credited to her account until after another late fee had been assessed. The landlord applied this payment to the March and April late fees first, leaving a balance owing of $50.00. On April 22, Featherstone sent Ms. Calabro a $23.00 bill for maintenance, due within thirty days (or May 22, 2003). Featherstone's witness testified the landlord would apply payments first to late fees, then to other charges (such as maintenance charges), then to current rent.

Ms. Calabro's May 2003 public assistance check, her only income, normally received on the third of each month, arrived on May 11, 2003. On May 12, Featherstone sent her a notice to pay unpaid rent, and demanded payment of $203.00. The notice included $50.00 for "unpaid" April rent, a late fee for May, and the $23.00 maintenance fee. Ms. Calabro testified she mailed a payment and produced a money order receipt for $130.00, dated May 12, 2003; however, Featherstone's witness testified the payment was not received.[1] Featherstone filed this action on May 21. The small claims petition incorporated the contents of the May 12 notice by reference.

---

1. From the information presented to the district court on appeal, but not considered by it, apparently Ms. Calabro accidentally mailed

this payment to her cellular telephone provider.

■ Turning to the applicable law, we first conclude the late fees charged exceed the amount permitted by HUD. According to the relevant HUD handbook, Featherstone may charge a late fee of $5.00 if the rent is not paid on the sixth of each month, and $1.00 per day for each additional day that rent remains unpaid. U.S. Dep't of Hous. & Urban Dev., Handbook 4350.3, *Occupancy Requirements of Subsidized Multifamily Housing Programs* 6–23(B), at 6–34 (2003) [hereinafter *HUD Handbook*]. This portion of the *HUD Handbook* is reasonable and not "inconsistent with statutory authority." *Horizon Homes,* 684 N.W.2d at 226. Therefore, we enforce it. The late fee charged by Featherstone clearly exceeds this limit, and there is no indication Featherstone has received HUD's permission to charge a higher late fee.

■ We also conclude Ms. Calabro may not be evicted for unpaid late fees. Not only is this against HUD policy, *see HUD Handbook* 6–23(E), at 6–34; *see also Community Realty Mgmt. Co. v. Harris,* 155 N.J. 212, 714 A.2d 282, 292–93 (1998), it is prohibited by Ms. Calabro's lease. The inclusion of late fees on Ms. Calabro's notice to pay unpaid rent and the petition violates federal law and is a breach of the lease. *See also Brown v. N.Y. Residential Works, Inc.,* 5 Misc.3d 614, 782 N.Y.S.2d 628, 632 (N.Y.City Civ.Ct.2004) (stating collection of unauthorized late fees may give rise to a cause of action for fraud). We note HUD allows landlords to collect late fees in other ways, such as by withholding funds from a tenant's security deposit. *HUD Handbook* 6–23(E), at 6–34.

■ We now consider Featherstone's decision to apply any payments first to late fees. Featherstone argues it is entitled to apply Ms. Calabro's payments in any manner it sees fit. It argues it may apply her payments to late fees, charges for which it could not evict her, leaving her with a balance at the end of each month. We would agree with this argument only if Featherstone could evict its tenants for unpaid late fees. Here, it attempts to do indirectly what it could not do directly. Featherstone's argument turns HUD policy on its head, and we are not persuaded by it.

■ **II. The Remedy.** Citing *Symonds v. Green,* 493 N.W.2d 801 (Iowa 1992),[2] Ms. Calabro asks us to strike the notice to pay unpaid rent because of its demand for late fees and the maintenance charge and dismiss this case. Featherstone asks us to affirm, arguing Ms. Calabro did owe rent, regardless of the amount stated in the notice, *see Garrison v. Fetters,* 383 N.W.2d 550, 553 (Iowa 1986), and did not pay it. We are persuaded by Ms. Calabro's argument.

We begin by noting the cases cited by the parties are factually distinguishable. In *Garrison,* the notice to pay unpaid rent did not advise the tenants of the amount due or the due date. *Garrison,* 383 N.W.2d at 553. Our supreme court rejected that argument, noting section 562A.27(2) only required notice that rent was due and that the lease would be terminated if rent was not paid within three days. *Id.* The *Garrison* court found the tenants received the notice required by statute. *Id. Symonds* is also distinguishable. In that case, the landlord served a

---

**2.** Ms. Calabro also argues reversal is required by HUD regulations' governing the required contents of termination notices. *See, e.g.,* 24 C.F.R. § 247.4. We need not consider this argument, as Iowa law provides her the relief she seeks. Moreover, the district court's ability to grant relief from a notice to cure under chapter 562A does not depend on whether the tenant receives any form of housing subsidy.

three-day notice to quit, which did not contain the "right to cure" language required by section 562A.27(2). *Symonds*, 493 N.W.2d at 803. As the landlord failed to give the notice required by statute, the *Symonds* court held the "trial court lacked jurisdiction to hear" the landlord's forcible entry petition. *Id.*

While Featherstone's notice to Ms. Calabro contains the matter required by section 562A.27, our inquiry is not over. The illegal terms contained in Featherstone's notice continue to demand our attention. Of the $203.00 demanded in the notice at issue, we conclude a large portion is not allowable. Demanding the $25.00 May late fee is clearly illegal. *HUD Handbook* 6–23(E), at 6–34. This factor alone would require some form of relief. We also conclude the $50.00 sought for April rent is properly characterized as late fees for March and April, given the landlord's improper policy of applying payments first to unpaid late fees. As noted above, this approach entirely frustrates HUD policy. Although these two factors would be enough to grant the relief Ms. Calabro seeks, on our de novo review, we additionally find and conclude the $23.00 maintenance fee was not yet delinquent when Featherstone gave the notice at issue. By the terms of her lease and the April 22 maintenance bill, Ms. Calabro had until May 22, 2003 to pay this bill. She should be allowed this entire period to pay this amount. Any lesser amount of time would violate her lease, and any action to enforce this debt prior to the end of this allowed period is premature.

■ While the parties cited no landlord-tenant case in which a notice was nullified for containing improper matter, we conclude cases concerning real estate contract forfeitures are fair comparisons and provide significant guidance. Like forcible entry actions involving residential tenants,

contract forfeitures are statutory remedies and require notices to cure any alleged contract breaches. Iowa Code § 657.2. Also like the present action, challenges to real estate contract forfeitures are heard in equity. *Sheeder v. Lemke*, 564 N.W.2d 1, 2 (Iowa 1997). In *Sheeder*, our supreme court nullified a notice of contract forfeiture due to "unreasonable" breach allegations and demands to cure. *Id.* at 3. There, nearly one-half of the alleged breach of $53,000.00 was attributable to "failure to insure a corncrib and barn." *Id.* The contract vendors demanded $25,000.00 to cure this alleged breach, when the value of the barn and "rat-infested" corncrib was around $500.00. *Id.* In granting relief to the contract purchaser, our supreme court stated:

> We find that the inclusion of this alleged breach and the demand of $25,000 to cure it was unreasonable. This circumstance alone requires a court of equity to grant relief from the forfeiture initiated by the Lemkes' notice. The Sheeders were in no position to predict which items in the notice would be sustained by a court and which items would be rejected. The unreasonableness of the total demand thus frustrated their efforts to pay its various components.

*Id.* We find similar considerations govern this case. The objectionable terms of the May 12 notice amount to nearly one-half of the alleged breaches. Additionally, Ms. Calabro had no way of knowing how the trial court would treat her contention that the May 12 notice contained illegal terms. Finally, the presence of illegal terms tended to frustrate her ability to comply with the demand to cure the alleged breach, especially given the landlord's policy of first applying rent to accrued late charges. We consider these factors in conjunction with the principle that a court sitting in equity will not give its aid to those who

seek to enforce a violation of the law, a consideration not present in *Sheeder. See, e.g., Incorporated Town of Ackley v. Central States Elec. Co.,* 206 Iowa 533, 539, 220 N.W. 315, 318 (1928). Finally, we find no equitable factor barring Ms. Calabro from receiving the relief she seeks. *Cf. Garrison,* 383 N.W.2d at 553 (stating tenants barred from equitable relief because they "lack clean hands").

We are mindful that Ms. Calabro received subsidized housing assistance. While the $98.00 in charges we have determined to be illegitimate may not be a large amount in absolute terms, it is nearly one-quarter of Ms. Calabro's monthly income. This factor strongly weighs in favor of Ms. Calabro's argument.

Based on the record before us, Featherstone's forcible entry and detainer judgment should be reversed.

**III. Attorney Fees.** Ms. Calabro challenges the attorney fee award. Although we reverse the judgment against her, some comment about the attorney fee award is necessary. Iowa Code section 562A.27(3) states landlords may recover reasonable attorney fees after termination of a tenancy if termination was due to "willful" noncompliance by the tenant. By the statute's plain language, not every tenant breach will justify a fee award. If every tenant breach formed the basis of an attorney fee award, the legislature would never have used the word "willful." *See* Iowa Code § 4.4(2) (stating "entire statute" is presumed effective). Nothing in the record supports a finding of willfulness. There is no evidence of stubborn disobedience or ill will on Ms. Calabro's part. *Cf. Brandenburg v. Feterl Mfg. Co.,* 603 N.W.2d 580, 585 (Iowa 1999) (in an action to set aside a default judgment, stating "willfully" and "defying" "indicate conduct . . . showing a *deliberate intention to ignore, and resist any adherence to,* the

rules of procedure") (emphasis added); *Kuta v. Newberg,* 600 N.W.2d 280, 288–89 (Iowa 1999) (under punitive damages statute, "willful and wanton disregard" means "the actor has *intentionally done an act of an unreasonable character* in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow") (emphasis added) (citation omitted). In a challenge to a contempt charge, our supreme court stated "willfully" means

> intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not.

*Henley v. Iowa District Ct.,* 533 N.W.2d 199, 202 (Iowa 1995) (citation omitted). Consistent with these authorities, we conclude "willful" as it is used in section 562A.27(3) connotes a similar state of mind, which we find Ms. Calabro lacked. Rather, the undisputed evidence reflects Ms. Calabro's May rent was initially late because of agency error in failing to timely issue public assistance payments to her. For this independent reason, the fee award is reversed.

**IV. Conclusion.** We have considered all issues presented, whether or not specifically addressed herein. We reverse and remand for further proceedings consistent with our opinion.

**REVERSED AND REMANDED.**